Hon. JNO. H. BURFORD, Chief Justice.
Hon. BAYARD T. HAINER,
Hon. BENJ. F. BURWELL,
Hon. CLINTON F. IRWIN,
Hon. FRANK E. GILLETTE.
Hon. J. L. PANCOAST,
Hon. JAMES K. BEAUCHAMP,

} Associate Justices.

---

RUFUS R. CONNELLA v. TERRITORY OF OKLAHOMA.

(Filed January 4, 1906.)

1. **CRIMINAL LAW—Forgery—Indictment—Sufficient, When.** In an
indictment drawn under section 523, of article 1, chapter 25, of the
Revised Statutes, entitled "Crimes and Punishments," the state-
ment that defendant unlawfully, wilfully, feloniously, falsely, and
designedly, did publish, sell, exchange, and deliver, for a valuable
consideration, to wit: the sum of eighteen hundred dollars in good
and lawful money of the United States of America, and of the value

of eighteen hunured dollars, to the Guthrie National Bank, a cor-
poration, duly organized and existing under the laws of the con-
gress of the United States, and having its principal place of busi-
ness at Guthrie, in Logan county, Oklahoma Territory, ten certain
false, forged, and counterfeited school warrants, the same being
evidences of debt, and the engagement for the payment of money
absolute which said school warrants purported to be evidences of
debt of, and the engagement for the payment of money by the Olus-
tee City school district No. 35, a corporation, in the county of Greer
Oklahoma Territory, which said corporation is authorized by law to
issue school warrants, and which said warrants and evidences of
debt so falsely, feloniously, and designedly, sold, exchanged, and
delivered by the said Rufus R. Connella as aforesaid, are in words
and figures, as folows, to wit: (Here is inserted a description of the
school warrants.) And the indictment concludes with the following
language to wit: "He, the said Rufus R. Connella, knowing the
same to be forged and counterfeited, with intent to cheat, wrong
and defraud the said Guthrie National Bank, and other persons, to
the grand jurors unknown, contrary to the form of the statutes in
such case made and provided, and against the peace and dignity of
the Territory of Oklahoma," is sufficient to charge the crime of
forgery, as set forth in said section, and the omission to charge
that the said sale was "with intent to have the same uttered or
passed" is not necessary, as the intent to have the same uttered or
passed, refers only to the offering of said warrant for sale, ex-
change, or delivery; or the receiving of such note or other instru-
ment upon a sale, exchange, or delivery, but where the indictment
charges that the warrant was actually sold, exchanged, and deliv-
ered, for a consideration, with the knowledge that the same was
forged or counterfeited, it would be sufficient allegation of intent
to utter or pass the same.

2.  EVIDENCE—Letters from Husband to Wife May be Used, When.
In a criminal prosecution, where a letter, previously written and
sent by the defendant to his wife, is not in the custody or control
of either the defendant or his wife, nor in the custody or control
of any agent or representative of either, but is in the custody and
control of a third person who is called as a witness for the prose-
cution in the case, such letter may be used in the case as evidence
against the defendant.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before
Bayard T. Hainer, Trial Judge.*

*Parmenter & Myers,* for plaintiff in error.

*P. C. Simons, Attorney General* for defendant in error.

### STATEMENT OF FACTS.

This is a case wherein the plaintiff in error, Rufus R. Connella was prosecuted by indictment for the crime of forgery, in the district court of Logan county, Oklahoma Territory, at the November term, 1903, at which the defendant was convicted of the crime of forgery, and also of the crime of having in his possession forged or counterfeited evidence of debt, with the intent to utter the same as true, as contained in the second count of the indictment.   To this indictment the defendant entered a general demurrer, which was by the court overruled, and exceptions saved, whereupon the defendant entered a plea of not guilty. Application was made for a change of judge, which was granted, and Judge Bayard T. Hainer was assigned to try the case.   A trial was had, which resulted in a verdict of guilty as charged in the indictment, on the first and second count.   Motion for new trial was regularly made, overruled, and exceptions saved; motion in arrest of judgment was duly made, filed, and overruled and exceptions saved, whereupon the court sentenced the defendant to a term of five years in the territorial penitentiary, on each count of the indictment, the said sentence to run concurrently from the 19th day of December, 1903, to all of which the defendant excepted, now excepts and brings the case here for review.

Opinion of the court by

IRWIN, J.:  The first assignment of error is that the fifth count of the indictment does not charge an offense under section 2442, of the "Crimes and Punishments" act, for the reason that it does not charge that the offense was commited with the intent to have the forged instruments uttered or

passed. The language of the section, being running section 2442, sec. 523, of article 1, chapter 25, of the statutes of 1903, known as Wilson's Statutes, is as follows:

"Every person who sells, exchanges or delivers for any consideration any forged or counterfeited promissory note, check, bill, draft, or other evidence of debt, or engagement for the payment of money absolutely, or upon any contingency, knowing the same to be forged or counterfeited, with intent to have the same uttered or passed, or who offers any such note or other instrument for sale, exchange or delivery for any consideration, with the like knowledge and intent or who receives any such note or other instrument upon a sale, exchange, or delivery for any consideration with the like knowledge and intent, is guilty of forgery in the second degree."

Now, by the terms of this section, the crime may be consummated in one of three ways: First, by a person actually selling, exchanging, or delivering, for a consideration, a forged or counterfeited instrument; second, by offering any such note or other instrument for sale, exchange, or delivery, for a consideration; third, by receiving any such note or other instrument upon a sale, exchange or delivery, for a consideration. The gist of the action is the sale or exchange and delivery of the instrument with the knowledge that it is a forged and counterfeited instrument, and with the intent to cheat and defraud. As to the second and third specifications of the definition of this crime, that is, the offering to sell, or the receiving in exchange of the counterfeited or forged instruments, it will be readily seen that the intent must have been, in order to constitute the crime, to utter or pass the same. But where, as in this indictment the offense charged is that the forged and counterfeited instruments were actually sold and delivered with full knowledge

that they were counterfeited or forged instruments, and for a consideration, it would be useless to charge that they were sold with the intent that they should be uttered or passed, because the fact of actually selling and delivering the same, with a guilty knowledge, would carry with it the necessary intent that they should be uttered or passed, and we think that a proper construction of this language would be that the intent to utter or pass, applies to the second and third specifications of the crime, to wit; in the case of an offer to sell, or receiving by sale, of the instruments.   Hence we think there is nothing in this contention of plaintiff in error.

The second assignment of error is that this first count of the indictment, charges two offenses, to wit; uttering and publishing, as one offense,   and selling or exchanging,   as another.   It will be seen by a comparison of the language of the indictment with the language of the statute, that all of the definitions of the statute are included in the indictment. The indictment contains this language:

"The defendant did unlawfully,   wilfully,   feloniously, falsely, and designedly, publish, sell, exchange, and deliver." The language of the statute, is "sell, exchange, or deliver." Now it is true the indictment contains one word in this definition which the statute does not contain.   That is the word "publish."   But we take it that where the language of the indictment is sufficient to charge the offense as defined in the statute, the mere fact that more words are used than are necessary, does not make the indictment bad.   This was a prosecution which could only be understood by the indictment to be a prosecution under the section for selling, exchanging, and delivering of a false, forged, or counterfeited instrument, and the word "publish" being used would not change or alter the nature of the offense.

It is next assigned as error, that the demurrer should have been sustained as to both counts of the indictment for the reason that neither count charges an offense.   The second count of the indictment charges that the defendant Rufus R. Connella had in his possession ten certified false, forged, and counterfeited school warrants, the same being evidence of debt, and the engagement for the payment of money absolute, which said school warrants purported to be evidence of debt, and the engagement for the payment of money by the Olustee City school district No. 35, a corporation in the county of Greer, Territory of Oklahoma, he the said Rufus R. Connella knowing the same to be forged and counterfeited, and with intent to utter the same as true, and with the intent to have the same uttered as true.

It seems to us that the second count of the indictment charges the offense clearly, in the language of section 524 of article 1, chapter 25, of the Revised Statutes of 1903, and clearly states the crime of having in possession, with intent to defraud, forged, altered, or counterfeited instruments, or other evidence of debt.

It is next assigned as error that the indictment is defective for the reason that the copies of the instrument known as school warrants, which are alleged to have been in the possession of Rufus R. Connella, the defendant and to have been sold and exchanged by him, did not purport to have the seal of the school district thereon.   Now while the statute requires that before the treasurer will be authorized to pay out money from the treasury on school warrants that they shall be attested by the seal of the district, there is no provision of law which requires that a copy of said school warrants, when copied into an indictment shall contain such seal.   The ob-

ject of the copy being attached, or inserted in the indictment, is to give the defendant full notice, and apprise him of the particular instrument on which forgery is charged. This is fully accomplished by setting forth in the indictment, or attaching thereto, a copy of the instrument. A number of cases are cited by counsel for plaintiff in error in support of their contention that the omission of the seal from the copy attached to the indictment, renders the indictment void, but we have examined them all, and think that a distinctive difference can be seen between the cases cited, and the case at bar.

In the case of *Robinson v. State,* 35 Tex. Crim. Rep. 54, which was a case where on trial for uttering a forged railroad ticket, it appears from the face thereof that it must be endorsed with a certain stamp on the back before it is complete and binding on the railroad company, it must also appear that such stamped endorsement has been set out in the indictment as part of the forged instrument before evidence of such endorsement is admissible. This, we think, presents a very different case, because there, the endorsement on the back was a part of the instrument itself, and no copy could be complete without a copy of that endorsement, which is not true of an official seal, which simply gives authority to the original document, and authorizes the payment of it by the treasurer.

In the case of *Caffrey v. State,* 36 Tex. Crim. Rep. 198, cited by plaintiff in error it is said:

"If the statute provides that a check in payment of the wages of a school teacher, 'shall in all instances be accompanied by the affidavit of the teacher that he is entitled to the amount specified in the check as compensation under his contract as teacher,' an indictment for the forgery of such

check which fails to set out the affidavit of the teacher, and to allege that such affidavit accompanied the check, is fatally defective."

There, for the same reason, the affidavit is a part of the instrument of which a copy would not be complete without it. This it seems to us would not be true of the seal of a school district, for it would not be presumed that the party drawing the indictment, or making the copies of the school warrants. would have possession of the seal of the school district so it could be placed thereon, and the fact of its being placed thereon would in no way enlighten or advise the defendants as to the nature or character of the instrument he was charged with forging or passing. The copy of the school warrants would be as full and complete, for the purposes of an indictment, without, as with the seal. Therefore, we think it was not necessary to attach the seal to the copies of the warrants before the same were attached to the indictment.

It is next urged that it was reversible error to refuse the defendant on his cross-examination of the witness Smith, the right to require said witness to testify as to any trouble existing between members of the school district board, with reference to school district indebtedness, and the payment of the same. We cannot see how this could have any bearing upon the question of the guilt or innocence of the defendant. This indictment charges two things: First, that this defendant sold, and delivered certain counterfeited school warrants; second, that he had in his possession certain counterfeit school warrants with the intent to utter and pass the same. Now we cannot see that any knowledge of trouble that might exist between the members of the school board could in any way affect this question of guilt or innocence.

It is next contended that reversible error was committed by the trial court in allowing to be introduced in evidence, over the objection of the defendant, a portion of a letter written by the defendant to his wife. Now the evidence shows that this letter, written by the defendant to his wife, was never in the possession of his wife, but passed into the possession of the sheriff, and we take the rule to be well established that where a letter has been previously written and sent by the defendant to his wife, and is not at the time in the custody or control of either the defendant, or his wife, nor in the custody and control of any agent or representative of either of them, but is in the custody and control of a third person, who is called as a witness for the prosecution, such letter may be used in evidence. The only prohibition of the statute is, that no communication between husband and wife, may be testified to by either, as against the other, in a criminal trial. This does not mean that a third person overhearing such conversation, or coming into possession of a knowledge of such conversation or communication, cannot be required to testify to it. This is a communication between husband and wife, not testified to by either, nor produced in court by either, but a communication which is in the nature of a statement against the interests of the defendant, in the possession and control of a disinterested person, who is not the agent, or representative of either the husband or wife, and we think is within the rule laid down by the Kansas supreme court in the case of *State of Kansas, v. Marion Buffington,* reported in the 20th Kansas, page 599, and in the case of *Jaquith v. Davidson,* reported in the 21st Kansas, page 347. In the latter case, the supreme court of that state, speaking through Justice Brewer, reiterates the same doctrine in the following language.

"In testifying, she, like any other party, testified in her own behalf. None of her testimony violated the last provision or pretended to touch upon any communication between herself and husband. Those communications are privileged, or rather the parties themselves may not disclose them upon the witness stand, though they are competent if they can be obtained from any other source."

Counsel for plaintiff in error in their brief, cite us to the provisions contained in vol. 1, Wilson's Statutes, page 672, section 2677, which provides:

"In cases where convicts sentenced to be imprisoned in the Territorial prison for a longer period than one year, it is the duty of the court before which the conviction is had to limit the time of sentence so that it will expire between the month of March and the month of November, unless the exact period of the sentence is fixed by law."

What the purpose of this citation is, we are unable to see, and nowhere in the motion for new trial, is there any objection raised to this part of the sentence. Neither is there any exceptions saved to it, and the first reference that is made to it in the entire case made, or briefs, is in the concluding part of plaintiff in error's brief. If the defendant in the court below desired the benefit of this provision of law, it would have been his duty to call the court's attention to it at the time of passing sentence, and if he did so call the court's attention to it, the record does not disclose it.

Having examined the entire record, and believing that a fair and impartial trial has been had, and a just decision reached, and finding no reversible error in the record, the decision of the district court is affirmed.

Hainer, J., who presided in the court below, not sitting; Beauchamp, J., absent; all the other Justices concurring.