Argued June 3, affirmed June 23, rehearing denied September 8, 1914.

## STATE *v.* WILKINS.*

(142 Pac. 589.)

**Criminal Law—Evidence—Competency.**

1.   It does not affect the admissibility of letters and documents to show that they were taken from the person of the defendant at the time of his arrest.

   [As to admissibility of evidence wrongfully obtained, see note in 136 Am. St. Rep. 135.]

**Witnesses—Competency—Husband and Wife.**

2.   Section 1535, L. O. L., providing that in criminal actions, where the husband is the party accused, the wife shall be a competent witness, but shall not be compelled or allowed to testify unless by consent of both of them, and Section 733, providing that a wife shall not be examined for or against her husband without his consent, nor can either without the consent of the other be examined as to any communication made by one to the other during the marriage, do not prevent the admission in evidence of letters from the wife to the husband, taken from his possession at the time of his arrest.

**Criminal Law—Evidence—Declarations by Accused.**

3.   In a prosecution for murder, where it was shown that accused had written a letter declaring an *alibi* in his favor, the admission in

---

*On the question of the competency of husband or wife as witness against the other in criminal prosecutions, see notes in 2 L. R. A. (N. S.) 862, 22 L. R. A. (N. S.) 240, and 41 L. R. A. (N. S.) 1213.

   For the admissibility against defendant of documents or articles taken from him, see notes in 59 L. R. A. 467, 8 L. R. A. (N. S.) 762, and 34 L. R. A. (N. S.) 58.

   As to evidence of other crimes in prosecution for murder, see notes in 62 L. R. A. 200, 227, 278, 308, and 320.     REPORTER.

evidence of a newspaper containing an account of the crime, and charging accused at least by implication with its commission, in connection with statements of accused made when confronted with the newspaper charge that he had gone to the scene of the homicide and awaited the return of decedent, whom he accosted, seeking information about his wife, that the decedent immediately assaulted him, and in the *mêlée* which ensued he knocked decedent down and ran away, was not error, in view of Section 727, L. O. L., providing that evidence may be given of a declaration or act of another in the presence and within the observation of a party, and of his conduct in relation thereto.

### Criminal Law—Evidence—Opinion Evidence.

4. In a prosecution for murder, testimony of one of the first persons to discover the body of decedent that he was lying nearly on his face, that it seemed he had been lying on his face, but they had turned over his head, and it threw his body in a sort of twist, is not objectionable as a conclusion of the witness.

### Homicide—Evidence—Other Offenses—Motive.

5. In a prosecution for murder, testimony of a daughter of decedent that during a visit to defendant and his wife in a camp defendant made an aggravated assault on the witness and vowed he would accomplish his purpose even if he had to kill her, though showing another offense, was admissible to show his motive for an attack upon decedent.

   [As to evidence of other crimes in criminal prosecution, see note in 105 Am. St. Rep. 976.]

### Homicide—Evidence—Self-defense—Character of Decedent.

6. In a prosecution for murder, where the defendant contended that the decedent had attacked him, the admission of testimony that decedent was not quarrelsome was proper.

   [As to evidence of character of deceased in homicide case, see note in 124 Am. St. Rep. 1018.]

### Homicide—Evidence—Admissibility.

7. In a prosecution for murder, the admission in evidence of a key and room ticket, which the manager of a hotel had issued to defendant, and which were found in the decedent's real estate office, where, as the testimony tended to show, the murderer awaited his victim, was proper as tending to show that defendant was the person who waited in the real estate office.

### Criminal Law—Trial—Instructions—Effect of Confessions.

8. Under Section 1537, L. O. L., a confession of defendant is not sufficient to warrant his conviction without some other proof that the crime has been committed, the refusal of instructions that the state must prove its charge by evidence sufficient to convince the jury beyond a reasonable doubt of the killing, independent of any admission or declaration of defendant, was not error.

### Criminal Law—Trial—Reception of Evidence—Estoppel to Object.

9. Where defendant objects to the admission of letters on the ground that they were written by his wife, he is not in a position to

object to the testimony of an expert that the handwriting of both of them was hers.

**Criminal Law—Trial—Instructions—Effect of Evidence.**

10. In a prosecution for murder, an instruction that, if the defendant had made false declarations that he was in his hotel at all times after 8 o'clock on the night of the homicide, the jury might take that into consideration in determining whether defendant was guilty, which, in connection with other instructions, simply authorized the jury to take the circumstance into consideration with all the other testimony, was not error.

**Criminal Law—Appeal—Disposition of Cause—Execution of Judgment.**

11. Under Section 1598, L. O. L., providing that the warrant shall appoint a day on which judgment is to be executed not less than 30 days nor more than 60 days from the time of judgment, any error in appointing a date more than 60 days after judgment will not authorize a new trial, and, the execution having been suspended by certificate of probable cause, the Supreme Court will examine the judgment and remit the cause to the Circuit Court for the appointment of a new date for execution.

From Multnomah: ROBERT G. MORROW, Judge.

The defendant, Lloyd H. Wilkins, was charged with the killing of one Lou L. Winters on October 11, 1913, and was convicted of murder in the first degree, and appeals.    AFFIRMED.    REHEARING DENIED.

For appellant there was a brief over the names of *Messrs. Wheelock & Williams* and *Messrs. Hume & McDevitt,* with oral arguments by *Mr. R. B. Williams* and *Mr. Wilson T. Hume.*

For the State there was a brief over the names of *Mr. Walter H. Evans,* District Attorney, *Mr. Robert F. Maguire* and *Mr. John A. Collier,* with an oral argument by *Mr. Maguire.*

Department 1.    MR. JUSTICE BURNETT delivered the opinion of the court.

1. The first and most important error assigned is the reception in evidence of letters and papers taken from the person of the defendant when he was arrested; the

letters being one written by himself and two others said to have been written to him by his wife. It does not affect the admissibility of letters and documents to show that they were taken from the person of the defendant at the time of his arrest: *State* v. *McDaniel*, 39 Or. 161 (65 Pac. 520).

2. So far as applicable to the case in hand, it is provided in Section 1535, L. O. L., as follows:

"In all criminal actions, where the husband is the party accused, the wife shall be a competent witness, and, when the wife is the party accused, the husband shall be a competent witness; but neither husband nor wife, in such cases, shall be compelled or allowed to testify in such case unless by consent of both of them."

It is also said in Section 733, L. O. L.:

"There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore a person cannot be examined as a witness in the following cases: (1) A husband shall not be examined for or against his wife, without her consent, nor a wife for or against her husband without his consent; nor can either, during the marriage or afterward, be, without the consent of the other, examined as to any communication made by one to the other during the marriage; but the exception does not apply to a civil action, suit, or proceeding, by one against the other, nor to a criminal action or proceeding for a crime committed by one against the other."

It will be observed that the statutes are directed against the examination of either spouse as a witness, and not against communications between them, the knowledge of which is derived from independent sources. The authorities all agree that, if oral communications between husband and wife are overheard by third parties, they may be given in evidence from the mouth of the witness to whom they were thus im-

parted. It is not perceived that any difference in principle can exist because the communication is in writing and has fallen into the possession of strangers by whom it is disclosed. It must be admitted that the decisions are not uniform on this subject. Many precedents like *Gross* v. *State* (Tex. Cr. App.), 135 S. W. 373 (33 L. R. A. (N. S.) 477), maintain the rule that, if the statement is one about which the spouse cannot be examined as a witness, the shield of privilege is never laid aside, no matter into whose possession the communication, if in writing, may fall. Other cases, like *State* v. *Wallace,* 162 N. C. 622 (78 S. E. 1); *Connella* v. *Territory,* 16 Okl. 365 (86 Pac. 72); *People* v. *Swaile,* 12 Cal. App. 192 (107 Pac. 134); *People* v. *Dunnigan,* 163 Mich. 349 (128 N. W. 180, 31 L. R. A. (N. S.) 940); *O'Toole* v. *Ohio German Fire Ins. Co.,* 159 Mich. 187 (123 N. W. 795, 24 L. R. A. (N. S.) 802), forming in our judgment the weight of authority, establish the rule that if the communications in question, although in writing, are produced by third parties, even if secured surreptitiously, are admissible in evidence, and the court will not concern itself about how possession of them was acquired. The reason of the rule is that it is necessary to preserve the trust that should ever exist between husband and wife, so that, if one spouse should make to the other a communication, the confidence thus reposed would remain as inviolable as though "in the deep bosom of the ocean buried," with the result that either may fearlessly make to the other a statement most vitally affecting the interests of the speaker or writer with the assurance of the law that the other will not be called upon to disclose the same. The essence of the rule seems to be the protection of the speaker or writer

from the testimony of the other spouse. The shield
is of no avail against such communications when dis-
closed by strangers. If either of the marital parties
would enjoy the privilege, that one must take care that
the secret does not become public.

To show the applicability of the letters in question,
it is necessary to give a slight *résumé,* of the testi-
mony involving the letters. It was the contention of
the state that the defendant sought out the deceased
for the purpose of killing him, and, thus actuated, went
to a point near the home of his victim, there awaited
his return at a late hour of the night, and slew him.
In some of his declarations about the purpose of his
going there, the defendant stated that he had repaired
to the spot to see his wife or obtain information about
her on the theory that she was being harbored by the
deceased. The letters taken from him, and to which
he objected on the ground that they were from his
wife, were written by her, as it would seem, after she
and the defendant had become estranged from each
other and had separated. They stated that she would
be far from the City of Portland, and that she had
not been at W.'s, meaning presumably the home of
Winters, the decedent. These letters were not the
communication of the husband to the wife, and his con-
fidence was not violated by their production. They
do not come within the reason of the rule which pro-
tects, from the consequences of his own declarations,
one making a statement to his spouse. The letters
were admissible as a circumstance which the jury was
authorized to consider affecting the good faith and
sincerity of the statement of the defendant as to his
purpose in going to the residence of Winters. The
wife was not called to testify, and the statute was not
infringed by the production of the letters which had

come into the hands of the state under the circumstances mentioned: *State* v. *Buffington,* 20 Kan. 599 (27 Am. Rep. 193); *State* v. *Hoyt,* 47 Conn. 518 (36 Am. Rep. 89); *De Leon* v. *Territory,* 9 Ariz. 161 (80 Pac. 348); *Hammons* v. *State,* 73 Ark. 495 (84 S. W. 718, 108 Am. St. Rep. 66, 3 Ann. Cas. 912, 68 L. R. A. 234); *Commonwealth* v. *Caponi,* 155 Mass. 534 (30 N. E. 82); *State* v. *Nelson,* 39 Wash. 221 (81 Pac. 721).

3. Among the articles taken from the person of the defendant at the time of his arrest was a portion of a newspaper of date October 13, 1913, containing an account of the homicide and charging the same to the defendant. There was also found in his possession a letter which he admitted was written by himself, as already stated, addressed to his uncle and aunt, saying, among other things:

"I am accused of a crime that I am innocent of and a lot more stuff in the paper. Well, maybe they will find the cause of the affair to turn out against someone else. Well, I am going to keep out of sight till they get clue of someone else they might have reasons to suspicion. If the crime was committed at the hour stated in paper, why I was in bed at that evening at 8 P. M., and no one can prove different."

There was testimony also to the effect that the defendant afterward stated that he had gone to the scene of the homicide and awaited the return of Winters, whom he accosted, seeking information about his wife; that the decedent immediately assaulted him, and in the *mêlée* which ensued he knocked Winters down and ran away. The newspaper was admitted in evidence over the objection of the defendant that it was irrelevant, incompetent and immaterial. In support of his objections, his counsel cites authorities which hold that it is vitiating error for jurors to get access to news-

papers giving accounts of crime and to consider them
in their deliberation. These precedents, however, are
not applicable to the situation before us. The declara-
tions of the newspaper and the conduct of the defend-
ant in making contradictory statements about his con-
nection with the affair come within the reason of the
provisions of Section 727, L. O. L., saying:

"In conformity with the preceding provisions, evi-
dence may be given on the trial, of the following facts:
* * (3) A declaration or act of another, in the pres-
ence and within the observation of a party, and his
conduct in relation thereto."

Here the defendant was confronted with a printed
statement emanating from the publisher of the news-
paper charging him, by implication at least, with the
commission of the crime. It was competent to show
this declaration, together with his evasive statement
about the same, the knowledge of which was imputed
to him by its being in his possession. His letter in
evidence declares an *alibi* in his favor. His statements
to his interrogators show that he was present at the
time and place of the homicide. The jury was au-
thorized to consider this circumstance as tending to
show that he was fabricating a defense.

4. A witness who was among the first persons to
discover the body was asked to indicate to the jury
its position when he saw it. He answered:

"Well, he was lying nearly on his face. His feet
and the lower part of his body—it seemed he had been
lying on his face, but they had turned over his head,
and it threw his body in sort of a twist."

It is argued that this testimony calls for a conclu-
sion of the witness. In our judgment this contention
is erroneous. The testimony simply describes the
seeming or appearance as it confronted the witness.

If error, it was harmless, for the position of the body
was not vital nor important in the case.   On this point
the defendant relies principally upon the case of *State*
v. *Barrett,* 33 Or. 194 (54 Pac. 807).   There the homi-
cide occurred in a saloon.   The contention of the state
was that the deceased was killed in the  front room;
that the body had been removed by the defendant or
those in his interest to the back room and laid down
with a pistol near it in a position tending to indicate
that the  defendant had  killed the  decedent in  self-
defense.   A police officer was called and gave it as his
opinion that the body would not naturally have fallen
in the position in which it was found after having suf-
fered the wound which had been inflicted.   The court
properly held that this was not a subject for expert
testimony.   There the  position of  the  body was a
vitally material question presenting quite a different
situation from that involved in the case at bar.

5. Over the objection of the defendant, to the effect
that the testimony was incompetent, irrelevant and im-
material, and, if true, tended only to establish the com-
mission of another offense at another time and under
other circumstances not connected with the charge in
the indictment, the state was  allowed to put in the
evidence of Frankie Winters, the daughter of the de-
cedent.   She testified to  the  effect that in  August,
preceding the homicide, she visited the defendant and
his wife where they were camped on the Lower Colum-
bia, and found them living in a tent in which they spent
the night, during which the defendant made an aggra-
vated sexual assault upon her, and in the affray which
ensued the wife of the defendant sided with her and
with her left the place next morning, separating from
the defendant.   She also stated substantially that the
defendant vowed he would accomplish his purpose on

her person even if he had to kill her. Although this testimony tended to prove another crime against the defendant, yet it was admissible in the present juncture as throwing light upon the motive controlling him in his attack upon the decedent: *State* v. *Martin,* 47 Or. 282 (83 Pac. 849, 8 Ann. Cas. 769), approved in *State* v. *Hembree,* 54 Or. 463 (103 Pac. 1008), is particularly a parallel case in which the authorities are reviewed at length by Mr. Justice MOORE, and forms a controlling precedent in this case for the admission of the testimony of the decedent's daughter. The principle is really approved in the authorities cited by the defendant.

In *State* v. *Hyde,* 234 Mo. 200 (136 S. W. 316, Ann. Cas. 1912D, 191), the defendant was indicted for the murder of his wife's uncle. The state endeavored to show that the deceased was poisoned, and that the defendant, a practicing physician, had also poisoned certain relatives of the murdered man with the idea that by their removal the residue of his estate would descend to his wife instead of to them. The court there laid down the principle that it would have been permissible to show this as explaining the motive he had in killing the uncle, but on examination of the testimony held that it had no probative value for that purpose. So in *State* v. *Start,* 65 Or. 178 (132 Pac. 512, 46 L. R. A. (N. S.) 266), the principle is recognized and the illustration given that, where a burglar stole tools from a foundry with which to break into the safe burglarized, the commission of the burglary with the tools stolen could be given on the trial of an indictment for the larceny of the tools as supplying the motive for stealing them. In the case at bar, if the defendant had grievously wronged the daughter of the decedent, he might reasonably suspect that his victim

would take measures to bring him to justice or possibly to avenge the insult, whence would arise the motive for putting the decedent out of the way to protect himself or to remove her natural protector as an obstacle to his designs against the daughter. The evidence of the daughter was competent on the question of motive.

6. The defendant complains of the admission of the sworn declaration of one Struble to the effect that the decedent was not quarrelsome. This was proper testimony as a circumstance tending to rebut the contention of the defendant that Winters had attacked him. It is laid down in *State* v. *Morey,* 25 Or. 241 (35 Pac. 655, 36 Pac. 573), that the defendant is entitled to show that the deceased was a quarrelsome, turbulent individual, thus throwing light upon the situation as raising in the mind of the defendant a reasonable apprehension of bodily harm to himself, authorizing him to act in self-defense. By a parity of reasoning to overcome the contention of the defendant that he acted in self-defense against an attack of the decedent, the state is entitled to show that the decedent was a peaceable, inoffensive person.

7. The state introduced in evidence a key and a room ticket found in the decedent's real estate office adjacent to his residence, in which, as the testimony tended to show, the murderer awaited the coming of his victim. The room ticket was one which the manager of a hotel had issued to the defendant, and the key was similar to those furnished lodgers at that hotel. These were properly admitted in evidence as a circumstance tending to show that the defendant was the person who was in the real estate office adjacent to the scene of the crime.

8. The defendant asked the court to give a series of instructions to the effect that the state must prove its charge by evidence sufficient to convince the jury, beyond a reasonable doubt, of his killing, independent of any admission or declaration of the defendant. Section 1537, L. O. L., lays down the rule:

"A confession of a defendant, whether in the course of judicial proceedings or to a private person, cannot be given in evidence against him, when made under the influence of fear produced by threats, nor is a confession only sufficient to warrant his conviction, without some other proof that the crime has been committed."

The instruction asked by the defendant would make his admission or declaration a mere negligible factor and require the state to prove the guilt of the defendant without reference to such testimony. Such, however, is not the law. Admissions or confessions are a species of original testimony, and, while they must be corroborated, there is no rule requiring the state to make out its case without them.

9. One of the letters attributed to the defendant's wife had her name appended to it, and the other was not signed. There was testimony to the effect that the handwriting of both of them was hers. The defendant objected to their introduction on the ground that they were communications from his wife, and hence privileged. He, however, complains that it was error for the state to introduce the evidence of an expert in handwriting to the effect that both the letters were written by the same person. This was merely corroborative of the testimony of the other witnesses, who were familiar with her handwriting, and who attributed the letters to her. In view of the defendant's contention that they should be excluded because they were

written by his wife, he was not in a position to raise any objection to the testimony of the expert.

10. The defendant also complains of an instruction of the court to the effect that, if the jury should find that the defendant had made false declarations in substance that he was in his hotel at all times after 8 o'clock on the night of the homicide, they might take that into consideration as a circumstance and determine whether or not the defendant is guilty of the crime charged. Taken with the other instructions, the effect of this declaration of the court was simply to authorize the jury to take that circumstance into consideration with all the other testimony in making up their judgment about the truth of the matter in controversy, and no error was committed in thus stating the principle to the jury.

11. Lastly, it was contended that the court erred in appointing a date for the execution more than sixty days after the rendition of the judgment. The judgment was rendered on January 5, 1914, and the date of execution was appointed for March 24, 1914. Section 1598, L. O. L., says:

"The warrant shall state the conviction and judgment and appoint a day on which the judgment is to be executed, which must not be less than thirty days nor more than sixty days from the time of judgment."

This is not such an error as will authorize a new trial of the issue in any event, and, as the execution thereof was suspended by the certificate of probable cause, the proper practice, within the meaning of *State* v. *Armstrong,* 45 Or. 26 (74 Pac. 1025), is to affirm the judgment and remit the cause to the Circuit Court for the purpose of appointing a new date for the execution of the judgment.

A careful examination of the record leads to the conclusion that the judgment of the Circuit Court, momentous as it is for the defendant, must be affirmed.

It is so ordered.     AFFIRMED.     REHEARING DENIED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE MOORE and MR. JUSTICE RAMSEY concur.