## P. W. MURRAY v. STATE.

No. A-4205.    Opinion Filed July 11, 1923.
(217 Pac. 891.)

(Syllabus.)

1. **Larceny—Fifteen Years' Imprisonment for Larceny of Automobile Excessive by Five Years.** In a prosecution for the theft of an automobile, sentence of 15 years' imprisonment, held, in the light of the facts disclosed by the record, excessive, and sentence reduced to a term of 10 years.

2. **Trial—Scope of Argument by Counsel for State.** Counsel for the state, in argument to the jury, must confine himself to the evidence in the case, and should not go beyond the limits of legitimate argument and comment thereon.

3. **Appeal and Error—Misconduct of Prosecuting Attorney—Necessity for Prejudice.** A conviction will not be reversed on the ground of alleged misconduct of counsel for the state, unless, upon consideration of the whole case, this court can say that the prosecuting attorney was not only guilty of misconduct, but that such conduct might have in some degree influenced the verdict of conviction.

Appeal from District Court, Washington County; J. R. Charlton, Judge.

P. W. Murray was convicted of grand larceny, and he appeals.  Modified and affirmed.

J. C. Daugherty, for plaintiff in error.

The Attorney General, for the State.

DOYLE, J.  In the information in this case P. W. Murray was charged with the theft of one four-passenger Cadillac touring car, the property of one Andrew Tayrien.  Upon his trial a verdict of guilty was found and the punishment fixed at imprisonment in the penitentiary for the term of 15 years. To reverse the judgment he has been permitted to prosecute his appeal as a poor person, but there has been no appearance in his behalf on his appeal, and we have been compelled to examine the record for the errors, if any, upon which this appeal is based.

The evidence is very brief.  It shows that the Cadillac car in question was taken from Mr. Tayrien's garage in Bartlesville some time after midnight, the morning of the 28th day of May, 1921.  About 9 o'clock that morning the county investigator of Tulsa county received information that a big touring car was hidden in the hills about six miles northwest of Tulsa, and with three deputy sheriffs he went out there and found the defendant driving this Cadillac car; when the defendant saw the officers he quit the car and ran into the woods, and shortly afterwards the officers found him up in a tree.  He told the officers that his name was J. F. Collins; that the night before he was walking to Bartlesville and was picked up by a man in a Ford, and about two miles out from Bartlesville he saw this car vacant by the side of the road with the lights burning; that the man he came to town with got drunk, and he walked back to where the car was, and found it there with the lights still burning; that he got in the car, and was trying to get to Tulsa with it.

As a witness in his own behalf the defendant testified:

"My age is 25 years; I have been a tool dresser in the Oklahoma oil fields for the past five years. Prior to the 28th of May, I was working for A. R. Thomas in the Wild Horse District of Osage county; I quit May 27th, and went with Mr. Thomas to Tulsa, arriving there the next morning about 8 o'clock. I was walking down Second street and saw Joe Brown in a Cadillac car; he called to me, and I got in the car, and we drove around town. I had known Brown a year or more. He asked me if I would do him a favor; I said I would. He said, 'I want you to drive this car out to Harry Smith's place,' and I drove it out. I told Smith a party sent me out there to leave the car; he told me to drive it down behind the bluff. Joe Brown told me it was a stolen car. I said, 'I may get into trouble.' He said, 'If you get into trouble I will get you out, and I will give you $200 to go back and get the car.' The story I told the officers was exactly the story Brown told me."

In addition to the usual assignments of error, that the verdict was contrary to the law and the evidence, and error in overruling the motion for a new trial, it is assigned that the court erred in admitting incompetent evidence and in permitting the county attorney to ask the defendant prejudicial questions on cross-examination, and in allowing the county attorney in his closing argument to the jury to make prejudicial statements of matters outside of the record, and of such character as would likely arouse the passion and prejudice of the jury against the defendant.

During the closing argument to the jury the county attorney made the following statement:

"He came down to my office and said, 'I will make a deal with you. If you will let me plead guilty to receiving stolen property I will tell you who stole that car, and I will tell you where Bynum and Gallantine are. This man who is shielding the stealing of cars and shielding the killing of boys—'

"Mr. Daugherty: We object to that argument.

"The Court: Overruled.

"Mr. Daugherty:  Except.

"The County Attorney: Gentlemen, when they get up and object to the argument we know it hurts; but those facts ought to prove to your minds that this man is guilty."

No specific objection was made to these statements, other than the exception taken, nor was the court asked to instruct the jury to disregard the same.

There is evidence in this case upon which counsel for the state could properly make the statement objected to, if we except the closing remark, "and shielding the killing of boys." There was no evidence in the case to warrant this remark.  It went beyond the bounds of legitimate argument, but, while the remark was improper, counsel for the defendant did not specifically object to this remark, but contented himself with a general objection to the entire statement.  This court holds that a conviction will not be reversed on the ground of alleged misconduct of counsel for the state, unless upon consideration of the whole case, we can say that the prosecuting attorney was not only guilty of misconduct, but that such misconduct might have in some degree influenced the verdict against the defendant.  Reed v. State, 2 Okla. Cr. 589, 103 Pac. 1042.  Upon examination of the entire record we are of the opinion that the improper remark does not constitute reversible error.  However, we think this improper remark should be considered in connection with the question as to whether the punishment assessed by the jury is excessive.

It is both the spirit and intention of our laws that sentences should be imposed in criminal cases for the protection of society and the reformation of the criminal, and sentences should be imposed in keeping with the spirit of the law.  In view of

the fact that defendant is only 25 years of age, and that this is his first offense, we are inclined to think that the punishment fixed by the verdict of the jury is excessive. In our opinion 10 years' imprisonment in  the  penitentiary  will be as much protection to society and do him as much good as would 15 years.

The judgment and sentence herein will therefore be modified by reducing the sentence to a term of 10 years, and, as thus modified, the judgment of conviction is affirmed.  The clerk will cause the warden of the penitentiary to be notified of this modification by transmitting to him a copy of this opinion.

BESSEY, J., concurs.

MATSON, P. J., absent and not participating.