Argued September 14, affirmed October 12, 1926.

## STATE *v.* FLOYD HARRIS.

### (249 Pac. 1046.)

**Criminal Law.**

1. Relevancy as evidence of articles found at home of one accused of larceny is not affected by circumstance that they were wrongfully seized, where defendant failed to obtain order of court ruling on petition to suppress evidence, in view of Sections 1854, 1855, 1864, 1865, Or. L.

**Criminal Law.**

2. Merits of petition to suppress evidence cannot be considered on appeal, where order denying it is not shown to have been made by record.

**Criminal Law.**

3. Evidence of defendant's flight is always admissible.

**Criminal Law.**

4. Testimony as to appearance and condition of property alleged to have been stolen is admissible, without producing property or accounting for its absence.

**Larceny.**

5. Testimony relative to two stolen blankets found near defendant's home, which were not mentioned in indictment, *held* admissible, where it tended to connect defendant with crime charged, and to show that they were taken at same time the property described in indictment was stolen.

---

Criminal Law, 16 C. J., p. 551, n. 9, p. 570, n. 90.
Evidence, 22 C. J., p. 980, n. 85.
Searches and Seizures, 35 Cyc., p. 1266, n. 13, p. 1272, n. 62, 64.

From Douglas: J. W. HAMILTON, Judge.

In Banc.

The defendant Floyd Harris was jointly indicted with Jim Wilson and Don Neaves on November 18, 1922, for the crime of larceny in the dwelling-house of J. C. Wamsley, alleged to have been committed on

---

1. Admissibility of evidence obtained by illegal search and seizure, see notes in 32 A. L. R. 408; 41 A. L. R. 1145; 24 A. L. R. 1408. See, also, 8 R. C. L. 196.
 3. See 8 R. C. L. 192.
 5. See 17 R. C. L. 75.

November 3, 1922, in Douglas County, Oregon. The property alleged to have been stolen consisted of bed-quilts, mattresses, pillows, sheets, carpenter's tools and a rug.

Upon trial of the defendant Floyd Harris, he was convicted by a jury and appeals from a resulting judgment.                              AFFIRMED.

For appellant there was a brief over the name of *Mr. Elbert B. Hermann* with an oral argument by *Mr. Albert Abraham.*

For respondent there was a brief and oral argument by *Mr. Guy Cordon*, District Attorney.

BEAN, J.—The circumstances of the case are about as follows:

On or about the third day of November, 1922, the residence of J. C. Wamsley in Yoncalla was entered and a large part of its furnishings were taken and hauled away in a truck. The tracks of the truck were plainly visible in the soft earth near the Wamsley residence. Harris and his associate had quit work at an apple orchard and presumably had left the Yoncalla vicinity a few days prior to the larceny. On the day before the night of the larceny, Harris was seen in a truck on the street of Yoncalla with a stranger. A few days after the larceny a deputy sheriff, accompanied by J. C. Wamsley, searched the premises of defendant Floyd Harris on Lost Creek, about twenty miles west of the town of Oakland. The town of Oakland is about twenty miles south of Yoncalla. On the way over to Lost Creek the officers noticed the prints of automobile truck tires in the road and then came upon the truck that made the tracks. The tread of three of the tires on this

truck corresponded to the prints of the truck tires found at the Wamsley residence on the day after the larceny. The officers met Floyd Harris and the stranger on the road a short way below the Floyd Harris residence. At the request of the officers Harris returned to his home with them, being advised that they had a search-warrant to search his premises. While the officers were searching the Harris house, the defendant fled from the house. They searched for him and found fresh footprints leading up a canyon away from the house. Following these tracks, one of the officers found two blankets, which were recognized by one Wilson, foreman of the apple orchard where Floyd Harris and the stranger had worked for three or four days, as the two blankets used by Harris and the stranger and which were also identified by Wamsley as his property. Mr. Wamsley who had stopped below on Lost Creek, came to the Floyd Harris home and there found a considerable portion of the property which had been stolen from his home. The sheriff, after the indictment was found, made search for Floyd Harris, but was unable to locate him for about two years, or until just a short time before the trial when he was apprehended.

On October 31, 1924, defendant filed a petition to return the personal property alleged to have been stolen and to suppress the evidence. We fail to find any record of the petition to suppress the evidence having been called to the attention of the court, or of any hearing thereon before the trial of the cause, which began on February 17, 1925. The bill of exceptions is silent in regard to any such preliminary proceeding.

The defendant objected to a portion of the evidence relating to the property alleged to have been

stolen and moved to strike out all of the testimony relating thereto, on the ground that the same was obtained pursuant to an unlawful search and seizure. At the close of the case the defendant, by his attorney, moved the court for a directed verdict in favor of defendant on the ground that the testimony was insufficient to be submitted to the jury. The motion was overruled and the defendant assigns such ruling as error.

1. The disposition of this motion depends upon the same question as that raised by a motion of the defendant to strike out all the testimony relating to articles of property, which the witness testified as being found at the house occupied by defendant, on the ground that the same was obtained pursuant to an unlawful search and contrary to the Constitution of the State of Oregon. Unless the motion to strike out should have been allowed, there was unquestionably testimony sufficient to sustain the indictment and to be submitted to the jury. Upon·the trial the defendant offered testimony in regard to the issuance of the search-warrant.

The rule invoked by the defendant is that announced in the case of *Weeks* v. *United States,* 232 U. S. 383 (58 L. Ed. 652, Ann. Cas. 1915C, 1177, L. R. A. 1915B, 834, 34 Sup. Ct. Rep. 341, see, also, Rose's U. S. Notes), which was mentioned in the case of *State* v. *Laundy,* 103 Or. 443, 493 (204 Pac. 958, 206 Pac. 290), to the effect that the rule of practice is that "an accused person whose property is taken by an officer of the federal government in violation of the fourth amendment, is entitled to an order of the court upon the filing of a timely petition directing the return of the unlawfully seized property" etc. This court has held that the relevancy of a given article as evidence is not affected by the circum-

stance that it was wrongfully seized; and hence, inquiry will not ordinarily be made during the trial concerning a collateral issue: *State* v. *McDaniel,* 39 Or. 161 (65 Pac. 520); *State* v. *Wilkins,* 72 Or. 77, 80 (142 Pac. 589); *State* v. *Ware,* 79 Or. 367, 377 (154 Pac. 905, 155 Pac. 364).

Section 1854, Or. L., provides for the issuance of a search-warrant upon probable cause shown by affidavit naming or describing the person and describing the property and the place to be searched. Section 1855 directs that the magistrate must, before issuing a warrant, examine on oath the complainant and any witness he may produce, and take their depositions in writing, and cause them to be subscribed by the parties making them.

Following this section of the Code is a form of search-warrant and directions for the execution thereof and the return to be made by the officer, etc. Section 1864, Or. L., enacts as follows:

*"Grounds of Warrant Controverted, Proceedings Thereupon.* If the person from whose possession the property was taken controvert the grounds of issuing the warrant, the magistrate must proceed to examine the matter by taking testimony in relation thereto."

Section 1865, Or. L., is as follows:

"Property, when to be restored. If it satisfactorily appear that the property taken is not the same as that described in the warrant, or that there is no probable cause for believing the existence of the grounds on which the warrant was issued, the magistrate must cause it to be restored to the person from whom it was taken."

In order for the defendant to have the benefit of the petition, which he filed to suppress the evidence,

he should have obtained an order of the court ruling thereon before the trial of the cause.

2. This is an appellate court and it is the purpose to review the proceedings of the Circuit Court. We cannot review the correctness of an order not shown to have been made by the record. After a search-warrant has been issued upon probable cause shown by affidavit, if the defendant from whose possession property has been taken, desires to contest the grounds of issuing the warrant he should at a proper time appear before the magistrate who issued the warrant, and controvert the grounds upon which the warrant was issued or raise an issue in regard to the issuance thereof. As will be noticed by the statute it is the duty of the magistrate to examine the matter by taking testimony in relation thereto.

In the case at bar defendant saw fit to evade the officers for about two years instead of applying to the magistrate to contest the grounds for the issuance of the warrant, or proceeding to have any examination in relation thereto. Neither did the defendant upon the trial of this case show that the property taken pursuant to the search-warrant was not the same as that described in the warrant. Neither does it appear that there was a want of probable cause for believing the existence of the grounds on which the warrant was issued in order that it might be restored to the defendant. Under all the circumstances in this case it does not seem that the defendant pursued the proper remedy, or was entitled to an order restoring possession of the property introduced in evidence.

Simply filing an application would not be a compliance with a requirement of the rule invoked by the defendant, but he should have obtained an order

of the court in regard thereto. It is stated in the briefs, although not shown in the record, that the court did make some ruling in regard to the evidence, presumably before the trial. The question as presented here, however, is a plain attempt to have the court turn aside from the regular trial of a criminal action and investigate the method by which the testimony in regard to the stolen property was obtained.

In *State* v. *Goldstein,* 111 Or. 221 (224 Pac. 1087), this court speaking by Mr. Chief Justice McBride said:

"Search of a person taken and of the place where he is captured for incriminating evidence are lawful incidents of an arrest and, even if the officers had seized the property without a search warrant and unlawfully, it is clear from the testimony in this case that the goods so seized were stolen and not the property of the defendant; and the court, under such circumstances, will not turn aside and inquire into the manner in which the evidence was obtained."

See, also, Cornelius, Search & Seizure, page 464, Section 247.

The motion of defendant to strike out the testimony pertaining to the stolen property, much of which was introduced without objection, was properly overruled.

3. The defendant objected to the testimony, tending to show the flight of defendant at the time the search of his residence was made and also the testimony of the officer indicating that he had been unable to find the defendant for a long time after the proceedings were first instituted. The evidence of the flight of a defendant, who is accused of the commission of the crime, is always admissible against the defendant: *State* v. *Lee,* 17 Or. 488 (21 Pac. 455); *State* v. *Ryan,* 47 Or. 338 (82 Pac. 703, 1 L. R. A. (N. S.)

862, and note); *State* v. *Osborne,* 54 Or. 289 (103 Pac. 62, 20 Ann. Cas. 627).

4. The defendant assigns error of the court in admitting the testimony of a witness in regard to the appearance and condition of the property alleged to have been stolen, without the introduction of the property itself. It is an established rule that such testimony may be given without producing the objects themselves, or accounting for their absence: *Heneky* v. *Smith,* 10 Or. 349 (45 Am. Rep. 143); 22 C. J. 979, § 1222.

5. The defendant also assigns error in the admission of the testimony relating to two blankets. It was shown that they were found near the residence of the defendant and in a direction therefrom, which the officer followed by means of tracks, which the testimony indicated were made by the defendant when he left the place at the time of the search. They were delivered to the owner, J. C. Wamsley, and identified by a witness who was foreman of an apple orchard where the defendant worked and who saw them in the possession of defendant soon after the time the larceny was committed. Although the blankets were not mentioned in the indictment, the testimony in regard thereto tended to connect the defendant with the commission of the crime and to show that the blankets were taken at the same time the property described in the indictment were stolen. There was no error in the admission of the testimony.

We have examined other assignments of error, but find no substantial reason to believe that the defendant did not have a fair and impartial trial. The judgment of the trial court is therefore affirmed.

AFFIRMED.

RAND and BELT, JJ., took no part in the consideration of this case.