## WHITE v. STATE.
### No. A–11876.

Criminal Court of Appeals of Oklahoma.
March 10, 1954.

Wallace & Wallace, Sapulpa, John L. Ward, Jr., Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

The plaintiff in error Clarence Lee White, 36 years of age, defendant below, was charged in the district court of Tulsa county, Oklahoma, by information, with the crime of wilfully and unlawfully touching, mauling and feeling of the private parts of Carol Lynette Grant, his stepdaughter, under 14 years of age and more particularly 12 years of age, contrary to the provisions of Title 21, § 1123, O.S.1951. The crime was allegedly committed on March 21, 1952 in the aforesaid county. The defendant was tried by a jury, and found guilty. The jury was unable to agree on the punishment and the penalty was left to be fixed by the trial court. The trial court assessed the punishment of the defendant at 4 years in the State Penitentiary; judgment and sentence was accordingly entered thereon, from which this appeal has been perfected.

The defendant's first contention is that the trial court erred in not sustaining his demurrer to the evidence. This contention is predicated upon the proposition that the state failed to corroborate the prosecutrix' testimony. This is a case of first impression as to Title 21, § 1123, as amended, Laws 1951, p. 60. Herein the defendant seeks to invoke the rule applicable in rape cases such as Louis v. State, 92 Okl.Cr. 156, 222 P.2d 160, 161, wherein the rule is stated:

> "While it is the law that a conviction for rape may be sustained upon the uncorroborated evidence of the prosecutrix, it is nevertheless equally well settled that, when such evidence is inherently improbable and almost incredible, there must be corroboration by other evidence as to the principal facts to sustain conviction."

We are of the opinion that because of the ease with which such charges can be made (as in the Louis case, supra) where a case

is weak and fraught with inconsistencies, corroboration of the principal facts should be required. Gullatt v. State, 80 Okl.Cr. 208, 158 P.2d 353; Johnson v. State, 84 Okl. Cr. 368, 182 P.2d 777; Cambron v. State, 86 Okl.Cr. 437, 193 P.2d 888. Herein the defendant predicates his contention of the insufficiency of the evidence on the proposition that the defendant and the prosecutrix' mother had been in considerable marital difficulties, Mrs. White having sued the defendant three times for divorce; and further because the defendant attempted to control the prosecutrix' conduct which the prosecutrix resented admitting that she did not like the defendant and did not want her mother to stay married to him. He thus attempts to bring himself within the case of Louis v. State, supra. But an examination of that case will disclose its inapplicability. In the Louis case the testimony of the prosecutrix was contradictory, inconsistent and definitely repudiated. Moreover it was obtained by duress, intimidation, coercion and fear, and was entirely without corroboration. Such is not the situation in the case at bar. Herein the testimony of the prosecutrix was neither improbable nor contradictory, but to the contrary, clear and convincing, consistent and corroborated as to the defendant's guilt. On the occasion in question the record shows the defendant worked at nights and slept in the daytime, and was at home when the prosecutrix returned home from school. The record further shows the prosecutrix' mother, wife of the defendant, worked with the Southwestern Bell Telephone Company in Tulsa in the daytime and was therefore not at home when the things complained of herein occurred. The prosecutrix related she had come home from school about 3:30 p. m., went to her room to change into her denim pants for play purposes. While she was undressed and entirely nude the defendant intruded with only his shorts on. She testified she pulled a quilt from the bed to cover herself. The defendant, she said, took the quilt from her and started playing with her breasts and her privates and stuck his finger in her private parts. This continued, she said, until the defendant observed it was almost time for him to go

and get her mother and got up and went into the bathroom to shave, and later dressed and went after her mother. The prosecutrix testified as to other occasions when these unlawful abuses occurred from September 1951 to March 21, 1952. The first time she said was some time in September 1951 on a Saturday morning. Her story in regard to this situation was as follows:

"Well, I was putting away the towels and stuff, we had just done the laundry and I was putting away the stuff in the home and I noticed this door was open and he was awake, so I went into the room and put the stuff away, into the chest of drawers. * * * And he called me over to the side of the bed and asked me if I loved him and I said, 'I guess so'; and then he got over to one side of the bed, pulled up the sheet and asked me to get in and I did and he said he wanted to talk to me and then he started talking to me about how much he loved the three of us and he said—at the time he was talking, he was rubbing on my back and on my legs and then he went on up and started trying to rub my breasts and I started to get out of the bed and he pulled me back and he said, 'Wait, I am not through talking to you yet,' and then he started talking to me, that he was breeding the dog we had to some other dog that a man had, and then he happened to look at his watch and he saw that it was time for him to go get my mother, so he left it; so he got up and ran into the bathroom and shaved to go get my mother and while he was in the bathroom, he called me to the door. I asked him what he wanted. He said, 'Come in here,' then he took hold of my hand and had me massage him until there was a white discharge and he told me that was what made a woman have a baby."

On one occasion her stepfather told her not to tell her mother "because I can go to prison for this and no telling what she might do to you". On the occasion on March 21 and the other occasions these things occurred she testified she made no

outcry though there were houses adjoining on both sides. Nine days after the occurrence on March 21 she told her mother, who thereupon reported the situation to the Tulsa police and the next day her daughter was examined by Dr. J. O. Akins of Tulsa on March 31, 1952.

Dr. Akins' testimony for the state was corroborative of the testimony of the prosecutrix in that it showed there was evidence of trauma and swelling of her labia of the vagina. He said that the condition he found could easily have been produced by the use of the fingers or hand of some one but it could have been caused by a number of other things. He testified it was not possible under the conditions he found to have been the result of a complete penetration of a normal adult male. He said the prosecutrix was a well developed child for her age and that the hymen was in a normal condition of a child of her age and development. He related the condition he found could have been produced as much as a week or more but not as long as 2 or 3 weeks before. He said it was impossible to fix the time the things occurred which produced the traumatic condition of the prosecutrix' private parts.

Further corroboration of the prosecutrix' story is found in the defendant's own admission to the police officers that the prosecutrix would come and get in bed with him while she was nude. This admission he made after being cautioned with reference to his constitutional rights. Furthermore, when Mrs. Beulah Johnson and Police Officer Jim Hart of the Tulsa police department, questioned the defendant he was asked if when she got in bed with him if he used his fingers on the prosecutrix' private parts, and they related the defendant said, "I don't think I will answer that", or that in substance.

▇▇ Moreover, some corroboration is found in a letter written by the defendant dated April 21, 1952 and sent to the prosecutrix' mother Mrs. Thelma White. This letter was identified by the prosecutrix as being in the handwriting of her stepfather, much of it irrelevant to the issues herein involved, but in the body of the letter we find the defendant said, "I begged many times that she would not come to me and told her that it was wrong and unfair to you and to me". In the postscript of the letter the defendant said, "Please remember this, Thelma, she always came to me when I was asleep in bed. I never once came to her". This feature of corroboration however is attacked in the defendant's second proposition. The letter was objected to on two grounds, first, that it was not properly identified. On this point the record shows that the prosecutrix identified the letter as being in the handwriting of the defendant, and further that she took it out of the mail box and that her mother read the letter first and later she read it and that together they took it to the county attorney's office. The second ground for objection was that it was in the nature of a privileged communication between a husband and wife and was therefore inadmissible. Both of these objections fall flat when the defendant testifying in his own behalf admitted on both direct and redirect examination that he had written the letter. Defendant was asked on redirect examination if he wrote the following, "In the letter on the second page, you said I am so sorry, mother, that you acted so soon without giving me a chance to let you know if things were like you thought and believe me, Thelma, they were not and never have been". He was then asked to make an explanation of what he meant by that statement, whereupon he proceeded to explain that he had been accused of mistreating the children, picking on the children and brow beating them. But he admitted that he had never been accused of molesting them. He admitted that the letter was written by him from the county jail. Thereafter, followed a positive denial of ever having molested the prosecutrix. It is fundamental in the trial of a criminal case that one cannot accept the benefits of a document written by himself without bearing the burdens of its detrimental effects. If any error was committed in admitting the letter in evidence it was cured by the defendant voluntarily seeking to make use of it to his advantage. Furthermore, the document ceased to be a privileged communication when the defend-

ant gave testimony concerning matters stated therein. The defendant's use of it in effect made it his by adoption; he could not embrace it for his purposes and ask the trial court to reject it as to the state. In Allen v. State, 35 Okl.Cr. 64, 248 P. 655, it was said:

> "If a husband, charged with rape against a stepdaughter, wishes to avail himself of the benefits of a privileged communication with his wife, he must himself refrain from giving testimony concerning matters stated in such communication."

This is really the predicate upon which this letter cannot now be rejected as improper evidence. Moreover, the defendant waived his original objection and is now estopped to reassert it. In Connella v. Territory, 16 Okl. 365, 86 P. 72, 75, in the body of the opinion the court said in construing Title 22, § 702, O.S.1951, in relation to a husband a wife not being a witness against the other, the following:

> "The only prohibition of the statute is that no communication between husband and wife may be testified to by either, as against the other, in a criminal trial. This does not mean that a third person overhearing such conversation, or coming into possession of a knowledge of such conversation or communication, cannot be required to testify to it. This is a communication between husband and wife, not testified to by either, nor produced in court by either, but a communication which is in the nature of a statement against the interests of the defendant, in the possession and control of a disinterested person, who is not the agent, or representative of either the husband or the wife, and we think is within the rule laid down by the Kansas Supreme Court in the case of State of Kansas v. Buffington, reported in 20 Kan. 599; and in the case of Jaquith v. Davidson, 21 Kan. 347. In the latter case, the Supreme Court of that state, speaking through Justice Brewer, reiterates the same doctrine, in the following language:

> "'In testifying, she, like any other party, testified in her own behalf. None of her testimony violated the last provision or pretended to touch upon any communication between herself and husband. Those communications are privileged, or rather the parties themselves may not disclose them upon the witness stand, though they are competent if they can be obtained from any other source.'"

For a further discussion as to this issue see the following cases in point, State v. Wilkins, 72 Or. 77, 142 P. 589; People v. Mitchell, 61 Cal.App. 569, 215 P. 117, 119. But the defendant asserts that the letter of April 2nd was in the nature of a plea for reconciliation and should have been protected from public gaze. With this assertion we cannot agree. The letter is more in the nature of a self-serving argument. We do not find that it in any way partakes of an entreaty for reconciliation. Nevertheless under the foregoing authorities the letter was admissible herein, and was not in violation of the provisions of Title 22, § 702, O.S.1951.

■ The last contention urged by the defendant is that certain misconduct of the assistant county attorney during the trial was prejudicial to the defendant's substantial rights. He complains that he was asked on cross examination, "What nationality are you?" to which objection was interposed and overruled. The answer then being, "Well, on my father's side French and Indian and on my mother's side I am Irish". On redirect examination he testified he considered himself an American. The defendant contends this was an appeal to a possible misconception of the jury, "that people of French, Indian and Irish extraction might be more inclined to sexual misadventures than others". We cannot agree that such an assumption is warranted since most Americans are an admixture of races, and in this part of the United States, many fine citizens are of Indian and Irish extraction and quite a few of French and Indian. We hardly see that this interrogation particularly when followed by the fact he was an American could be considered

prejudicial. While the defendant's nationality was immaterial as an issue and the question should not have been asked, it was not of such a nature as to create prejudice. We are of the opinion that the assumption of prejudice on the part of the defendant is entirely unwarranted. The cases relied on by the defendant, Golden v. State, 23 Okl.Cr. 243, 214 P. 946; Morehead v. State, 12 Okl.Cr. 62, 151 P. 1183; Hamilton v. State, 38 Okl.Cr. 62, 259 P. 168, are all cases involving strong claims of appeals to racial prejudice and are not colorless like the claim herein asserted. In any event we do not believe the matter influenced the jury's verdict of guilty. Murray v. State, 24 Okl.Cr. 113, 217 P. 891. And further where the proof of the defendant's guilt is evident the fact that on cross examination the county attorney may have propounded a question containing objectionable matter the conviction will ordinarily not be set aside, for that reason alone. Gilbert v. State, 23 Okl.Cr. 352, 214 P. 936. Furthermore it does not appear from the record that the question was asked for the evident purpose of taking an unfair advantage of the defendant.

▇▇▇ Finally the defendant contends as part of his third proposition that the county attorney in his closing argument repeatedly referred to the defendant's claim of privilege against the wife's testifying. It is admitted in the defendant's brief that the county attorney was apparently responding to argument of counsel that the wife refused to testify. The opening argument of counsel for the state and arguments of counsel for the defendant do not appear in the record. From what does appear in the closing argument of the assistant county attorney an examination thereof discloses that the matter objected to was in the

nature of a reply to argument made by defense counsel. It appears as having been provoked by defense argument. The situation is within the rule announced in Wilson v. State, 90 Okl.Cr. 180, 212 P.2d 172, 173:

"When the entire argument on both sides is not before the court, and the county attorney contends that his argument is in reply to argument advanced by defendant's counsel, and the trial judge overrules the objection to such argument, this court will not pass on the alleged error, unless the argument complained of constitutes a violation of some constitutional or statutory right of the defendant. Under such circumstances the presumption will be indulged on appeal that the trial judge rules that such argument was permissible as reply argument, as the burden is upon the appellant to affirmatively show error in the ruling of the trial court."

In Woodruff v. State, 56 Okl.Cr. 409, 41 P.2d 129, the rule is further amplified:

"Where improper remarks made by a prosecuting attorney to a jury have been provoked by and are in reply to remarks made by defendant's counsel, such remarks of the county attorney are not ordinarily ground for new trial."

This record does not support prejudice by reason of the argument of the assistant county attorney to any of the defendant's substantial rights, and the same does not therefore constitute reversible error. For all the above and foregoing reasons the judgment and sentence herein imposed is accordingly affirmed.

POWELL, P. J., and JONES, J., concur.