## GALBERT v. STATE.

No. A-2264.    Opinion Filed October 21, 1916.

(160 Pac. 332.)

1. HOMICIDE—Evidence—Sufficiency. In a conviction for murder, where eyewitnesses testified that they saw the defendant shooting at the deceased, coupled with the fact that immediately after the shooting a revolver was taken from the defendant with five empty shells in it, the exact number of shots fired, the verdict will not be disturbed on the ground that it is not sustained by the evidence.

2. TRIAL—Preliminary Proceedings—Service of List of Witnesses. A defendant in a murder case should know before he announces ready for trial whether or not he has been misled by a nickname or other cognomen ascribed to a witness in the list of witnesses served on him in conformity to the constitutional requirement, and whether or not from the list he understands what their post office address is; and if he announces ready for trial without objecting to any inaccuracy or defects in regard to these matters, he waives such defects, and an objection to such matters made after the case has gone to trial comes too late.

*Error from District Court, Pontotoc County.*

*Tom D. McKeown, Judge.*

Raize Galbert was convicted of murder, sentenced to life imprisonment, and brings error. Affirmed.

*C. C. Williams,* of Ada, for plaintiff in error.
*R. McMillan,* Asst. Atty. Gen., for the State.

BRETT, J. In this case the plaintiff in error, who will be referred to as defendant, was tried and convicted of murder and sentenced to life imprisonment.

(1) 1. He complains, first, that the verdict of the jury is not sustained by the evidence.

The deceased, Haywood Armstrong, was killed at a church entertainment at Maxwell, Pontotoc county. And the evidence on behalf of the state shows the deceased closed a stove door that a boy by the name of Rado Gillespie had opened. Gillespie told deceased to leave the door alone, and opened it again. To this deceased replied that the stove was smoking, and would fill the house with smoke, and that he (Gillespie) should not do that way, and in reply to this Gillespie began to curse deceased; whereupon deceased started toward the door, as though he intended to leave the house. The defendant, Galbert, called to him before he reached the door, and as he turned around, several eyewitnesses testify, without warning, or any demonstration on the part of the deceased, the defendant began shooting at him. Five shots were fired, some of which inflicted minor wounds, but two entered the body of deceased and produced almost instantaneous death. Immediately after the difficulty the father of defendant took a pistol from him containing five empty shells, and also took a pistol from Gillespie containing five loaded shells, one of which had been snapped.

The defendant denied shooting deceased, and claimed that his pistol was empty when he went to the entertainment, and that he emptied it in the afternoon shooting a bush near his home, and never reloaded it, but says that he missed the bush he shot at; hence it bears no mute evidence in his behalf. But he was corroborated by his mother and sister to the effect that he did fire five shots in the afternoon near the house. But under the testimony of eyewitnesses that they saw the defendant shoot

at the deceased, coupled with the fact that defendant's father, immediately after the shooting, took a revolver from him with five empty shells in it, which was the exact number of shots fired, and that the revolver of the Gillespie boy, which was taken from him at the same time, had not been discharged, but only snapped once, we could not think of disturbing the verdict in this case on the ground that it is not sustained by the evidence.

(2) 2. The only other matter defendant complains of is that among the names of the witnesses served on him, under the constitutional requirement, the only cognomen ascribed to one witness was "Rev. Walker," and, further, that the post office address of the first witness was given at Maxwell, Okla., and instead of writing the words, "Maxwell, Okla.," after each successive name, that only ditto marks appeared under the words "Maxwell," and "Oklahoma" opposite the names of all the other witnesses, and contends that this was a serious infringement upon his constitutional rights. But the purpose of the constitutional provision that "in capital cases, at least two days before a case is called for trial, the defendant shall be furnished with a list of the witnesses that will be called in chief, to prove the allegations in the indictment or information, together with their post office addresses," is to apprise the defendant who the witnesses are and where they may be found, and thus enable him to investigate their character, learn what their testimony will be, and take whatever steps he may desire to offset or rebut their evidence; and if the defendant in this case had not been able to locate the witness Walker by the cognomen given, or did not understand what these ditto marks meant, and had been mislead by reason of their use, he should have made his troubles known to the court before announcing ready for trial. But he did not do this. He answered ready for trial, and waited until Rev. Walker was called upon the witness stand, and then objected to his testifying on the grounds above set out. But the objection came too late. He should have known before announcing ready for trial whether or not he had been misled by these ditto marks and the cognomen

of Walker. He does not contend, or even intimate, that there was more than one Rev. Walker in the community, and that he had investigated the character of one Rev. Walker and talked to him, and that the Rev. Walker produced as a witness was another and different person to the one he had talked with, and whose character he had investigated. And under these conditions the defendant waived any right he might have had to require the state to furnish him more definite information as to the name of this witness, and his post office address; and the court properly overruled his objection. This proposition is thoroughly discussed and settled in *State v. Frisbee,* 8 Okla. Cr. 406, 127 Pac. 1091; *Franklin v. State,* 9 Okla. Cr. 178, 131 Pac. 183, and *Walker v. State,* 10 Okla. Cr. 533, 139 Pac. 711.

In *Walker v. State,* supra, the Christian name of one witness was omitted, in the list of witnesses served on the defendant; but the surname of that witness was given in the list with his post office address. There was no objection on the part of the defendant to the list served on him before going to trial, and no showing was made that he had been misled or prejudiced by the omission of the Christian name of this witness. And in that case the court held:

"* * * That where it affirmatively appears that the defendant has not been misled to his prejudice by the omission of the given name of a witness, whose surname and post office address appeared upon the list furnished to the defendant, he is not entitled to a reversal because the testimony of such witness has been received."

There appearing to be no prejudicial error, the judgment is affirmed.

DOYLE, P. J., and ARMSTRONG, J., concur.