## J. V. HOLLINGSHEAD v. STATE.

No. A-3831.   Opinion Filed May 3, 1922.
Rehearing Denied June 7, 1922
(207 Pac. 104.)

(Syllabus.)

1.  **Evidence—Declarations of Coconspirators.** After a conspiracy is shown to exist all acts of the conspirators in furtherance of the conspiracy, and all declarations of the conspirators, or any of them, touching upon the subject of the conspiracy before the object of the conspiracy is consummated or its purposes abandoned, are competent against the one on trial.

2.  **Evidence—Where Conspiracy Exists Evidence of Thefts Preceding Particular Theft Admissible.** Where there is a conspiracy to perpetrate a series of systematic thefts, and the thefts are consummated pursuant to the conspiracy, and the accused is prosecuted for one particular theft of the series, evidence of the thefts preceding the particular theft, as well as of those follow-circumstances of the particular crime charged.
ing, so long as the conspiracy continues, are competent to explain motive, intent, a common scheme or plan, elucidating the

3.  **Same—Testimony of Independent Theft Inadmissible.** Testimony concerning an independent theft of an automobile committed by a coconspirator for the purpose of fleeing from justice or for his own use, not a part of the conspiracy, is inadmissible.

4.  **Evidence—Accomplice's Testimony—Corroboration.** The testimony of an accomplice, to sustain a conviction, need not be corroborated in every particular in detail. The rule is that the testimony of an accomplice must be corroborated by such other evidence of material parts of his testimony as will tend to connect the defendant with the commission of the offense.

5.  **Appeal and Error—Harmless Error—Evidence of Independent Theft by Coconspirator.** The evidence concerning an alleged independent theft by a coconspirator examined, and held not prejudicial.

Appeal from District Court, Garfield County; James B. Cullison, Judge.

J. V. Hollingshead was convicted of the larceny of an automobile and sentenced to a term of 15 years in the state penitentiary, and he appeals.   Affirmed.

H. J. Sturgis, for plaintiff in error.

Geo. F. Short, Atty. Gen., and R. E. Wood, Asst. Atty. Gen., for the State.

BESSEY, J.   J. V. Hollingshead, plaintiff in error, in this opinion referred to as the defendant, was on January 15, 1920, in the district court of Garfield county convicted of the larceny of a Buick automobile on July 8, 1919, and by the judgment of the court rendered on the verdict, February 15, 1920, his punishment was fixed at confinement in the state penitentiary at McAlester for a term of 15 years.   After the overruling of a motion for a new trial the defendant appeals.

The outstanding facts gleaned from this record tend to show that C. C. Blasdell, W. W. Garrett, Quincy Kygar, the defendant, Hollingshead, and state's witness, O. R. Sams, during the summer of 1919 were implicated in the theft of a large number of automobiles, their bases of operation being at Enid, Okla., and Kansas City, Mo.   Oscar Sams was a married man of about 25 years of age, a farmer who for several years lived on a farm near the eastern line of Garfield county.   The defendant Hollingshead formerly lived on a farm near Hayward, in the eastern portion of the same county.   Prior to the summer of 1919 these two had known each other for some four or five years.   In February, 1919, defendant, Hollingshead, was employed by Blasdell as an automobile mechanic.   Blasdell at this time had an interest in an oil lease some distance from Enid, where he had an office.   He was also engaged in selling oil stock and in buying and trading secondhand automobiles. Hollingshead's duties were to repair and care for these cars, make trips to this oil lease and elsewhere, and do such other miscellaneous work as Blasdell might require.

Oscar Sams, as chief witness for the state, testified that in the month of May, 1919, he and defendant Hollingshead met

on the streets of Enid and there had some conversation about a new Ford car parked near by in the street, and that in the course of this conversation Hollingshead told him that if he would bring in Ford cars of that character and put them in Blasdell's barn he or Blasdell would pay Sams $125 for each car so delivered; that Sams finally agreed to this proposition, and, pursuant to the arrangement, went to the town of Garber and stole a practically new Ford car belonging to a Mr. Leslie. He brought this car to Enid, where Hollingshead was waiting for him, and they together put the car in Blasdell's garage. A short time thereafter Blasdell sold this car to a Mr. Hoff, a farmer near Garber. In the meantime the number on the engine block had been filed off and changed. Later the car was recovered from Hoff and restored to the owner.

Thereafter numerous cars were stolen by Sams at various times and places and delivered to Blasdell at his barn or garage, or at the barn of V. W. Garrett, if Blasdell's barn did not have room for them. In nearly every instance the numbers on the engine block were filed off and other numbers substituted. This process was termed "vaccination" by the conspirators. Later on it was agreed by Sams, Hollingshead, and Blasdell that Sams should procure better and higher priced cars, and the base of delivery and distribution was changed from Enid to Kansas City.

The particular car here in question, being a Buick car belonging to a Mr. Gannon, of Enid, was stolen by Sams from the streets of Enid and immediately driven by him to Kansas City, where he arrived about noon on July 9th and placed the car in the Cook & Nelson Garage, pursuant to a previous understanding with Blasdell. At this time both Hollingshead and Blasdell were in Kansas City, and on the afternoon of July 9th defendant, Hollingshead, Blasdell, Sams, and one "Blackie" Jones took this car from the garage out into the

country and changed the engine number and the car number with tools and dies which they had taken with them for that purpose. This car was sold by Blasdell to S. Hermans, a tailor in Kansas City, on July 10th, and was later recovered from him by Gannon, the owner.

It would extend this record unnecessarily to relate in detail the circumstances of the theft of each of the 12 or 15 cars which were stolen, handled, and recovered during the months of June and July, 1919. Over the objections of the defendant, Sams was permitted to testify to the theft of another car on July 14th, several days subsequent to the theft of the Buick car here in question. This car was also put in the Blasdell Garage, and on the 15th he put yet another stolen car in this garage. These cars were both sold and recovered later. After the recovery of some of the stolen cars sold by Blasdell, Blasdell was arrested in Kansas City and brought back to Enid on July 22d, charged with automobile theft.

The testimony of Sams, a confessed accomplice in this conspiracy to steal automobiles, was corroborated in many details by the admissions of defendant, Hollingshead, Blasdell, and by the testimony of disinterested witnesses, some of which were as follows:

Mrs. H. S. Cook, wife of one of the proprietors of the Cook & Nelson Garage in Kansas City, testified that Blasdell and Hollingshead were together a number of times at the garage about the 9th and 10th of July, 1919. She identified Sams as the man who brought in one or two cars which were afterwards shown to be stolen property, one of these cars being the Buick here in question. She identified a check or ticket made out by her and placed on this particular Buick car, showing the date of its reception and the hour at which it was taken out and the hour when returned, with the notation on the card, "Blasdell Buick," that Blasdell had told her that

he was looking for some cars in, which he claimed he was getting in trades.

Harry Doyle, a police sergeant at Kansas City, testified that Blasdell when arrested had a grip with dies in it, such as were used in stamping numbers on automobile engine blocks. In this he was corroborated by Policeman Allen, of the Kansas City police force, who testified further that these dies fitted exactly the changed numbers on the engine and on the frame of the Buick car in question.

A part of the register of the Kupper Hotel in Kansas City, beginning with the date of July 1, 1919, and extending to July 15th, was introduced in evidence, showing the names of Blasdell, Kygar, O. R. Sams and "Slim Hollingshead" as being registered there on the dates on which Sams testified to meeting these men in Kansas City.

With reference to transactions at Enid, G. M. Bellaires, a deputy sheriff for Garfield county, testified that he found a stolen car in Blasdell's garage, that when he found it the numbers on the car had not been changed, and that during the time he was returning to town to get another driver for his car the stolen car disappeared from the garage. This was one of the cars Sams testified to having taken, and the car was afterwards found on the streets of Enid, identified, and recovered by the owner.

Defendant, Hollingshead, admitted that he was working for Blasdell from February until July 17, 1919; that he was employed to do any work needed on Blasdell's cars; that at this time Blasdell was engaged in handling secondhand cars; that he went to Kansas City on the evening of July 7th to drive back a Dodge roadster for Blasdell; that Kygar went with him to drive down a Cadillac roadster from some point in Nebraska. Defendant admitted sleeping at the Kupper

Hotel on the night of July 8th, as shown by the register. Defendant admitted getting a car out of Blasdell's barn in Enid, in Blasdell's absence, and selling it on the authority of a long-distance telephone call from some unknown party. He admitted that this car had afterwards been identified as stolen property, and that he and Blasdell had been sued jointly for the recovery of the purchase price of this and other stolen cars. He also admitted that he was familiar with the use of dies to change numbers on engine blocks, and that he had made a number of such changes on cars not mentioned in Sams' testimony.

C. C. Blasdell, as a witness for the defendant, admitted receiving in Kansas City both the Buick car here in question and a Cadillac car which Sams testified to having stolen in Enid. He stated, however, that he purchased these cars, or traded oil stock for them, from two individuals, Mullens and Ward, neither of whom were produced in court. He admitted telling Mrs. Cook at the garage in Kansas City that he was expecting some cars in. He also admitted that a number of cars which he sold to various persons were subsequently recovered by the owners as stolen cars, and that he had been sued in a number of instances for the purchase price of such cars.

A further recital of corroborating testimony seems unnecessary. Sams' testimony, on the whole, was amply corroborated, showing that a conspiracy existed among Sams, Hollingshead, Blasdell, and others to systematically steal and dispose of stolen cars.

There was testimony admitted concerning the theft of another Buick car by Sams after the arrest of Blasdell, about August 1st. This car may have been stolen by Sams for his own use and benefit, and not in furtherance of his previous

conspiracy with Hollingshead and Blasdell. At this time Sams knew that Blasdell was in trouble about stolen cars, and Sams possibly stole this last car in order to make his escape to Colorado, where he went with the car—maybe for a much-needed rest and for recreation after his strenuous operations of the month previous. On the other hand, there was some reason to believe that he took this car with the intention of returning so soon as it was safe to do so and resume his operations with the defendant and Blasdell.

It is earnestly contended by counsel for defendant that all of the evidence concerning the theft of the cars taken subsequent to the date of the alleged theft of the Buick car charged in the information, and particularly concerning the theft of this last car in which Sams made his trip to Colorado, was concerning independent thefts, not connected with the conspiracy, and that the reception of this testimony was highly prejudicial to the rights of the defendant.

There is nothing shown in evidence definitely indicating just when the operations of this conspiracy ended or were to end. This was not a conspiracy to steal merely this particular Buick car here in question; it was a conspiracy to steal as many cars as could be safely stolen, and there was no time fixed as to when the joint enterprise should end. Sams testified that after Blasdell got into trouble he told Sams to go ahead and get other cars as he had been doing, but to do so under circumstances indicating that Blasdell was the victim of a frame-up. We think the evidence, in connection with all the surrounding circumstances, was sufficient to indicate that this conspiracy had not ended, and that the evidence of the theft of this last car may have been admissible on this theory.

We do not intend to depart from the previously announced rule of this and other courts that acts done by a cocon-

spirator, after the object of the conspiracy has been accomplished, are inadmissible in evidence against other coconspirators, unless the acts are so closely connected with the accomplishment of the object as to be explanatory of the common purpose. Koontz v. State, 10 Okla. Cr. 553, 139 Pac. 842, Ann. Cas. 1916A, 689; Spies v. People, 122 Ill. 1, 12 N. E. 865, 17 N. E. 898, 3 Am. St. Rep. 320, notes 487; 12 C. J. "Conspiracy," §§ 228-230.

Without deciding whether this evidence was admissible or not, we think that under the circumstances here its reception was not prejudicial to the defendant. Among other reasons, we are justified in this conclusion by the fact that in a companion case, being case No. A-3790, Hollingshead v. State, 21 Okla. Cr. 315, 207 Pac. 108, just decided, this same defendant was tried for the theft of the Cadillac car mentioned in this record, being one of the series of thefts appearing in this record, the state avoided any reference to the theft of the Buick car taken by Sams to Colorado; yet counsel for defendant, the same attorney representing the defendant in this case, on cross-examination of Sams examined him in detail as to the theft of this Buick car last stolen, evidently for the purpose of attacking his credibility as a witness by showing that he was a thief on his own account.

It has been often held by this court that the testimony of an accomplice need not be corroborated in every particular. The corroboration is sufficient if it covers the material portions of his testimony. If such corroboration shows that the accomplice has testified truthfully in many particulars, the jury will be justified in inferring that he has testified truthfully concerning other matters about which there is no corroboration. Section 5884, R. L. 1910; Ryal v. State, 16 Okla. Cr. 266, 182 Pac. 253; U. S. v. Lancaster (C. C.) 44 Fed. 896, 10 L. R. A. 333.

Complaint is made of certain language used in instruction No 9, viz.:

"But evidence of other crimes is competent to prove the specific crime charged when it tends to establish motive, intent, * * * a common scheme or plan of two or more crimes so related to each other that proof of one tends to establish the other."

The language just quoted, considered along with the two instructions which immediately follow, relating to conspiracy and the testimony of accomplices, fairly states the law applicable to this case.

One cannot read this record without being impressed that the defendant, Sams, and Blasdell were members of an organized syndicate engaged in the systematic theft of automobiles. Twelve or fifteen stolen cars, including the car here in controversy, were handled by these men in the course of one month. So far as this record discloses, with the possible exception of one car, this seems to have constituted the total business for that period.

As we see it, the testimony of Sams was amply corroborated in many material particulars by disinterested witnesses, by record evidence, and by the admissions of the defendant and of his witnesses.

The judgment of the trial court is therefore affirmed.

DOYLE, P. J., and MATSON, J., concur.