## CLEVE SWEET v. STATE.

No. A-9711.   Nov. 27, 1940.
(107 P. 2d 817.)

444

M. O. Counts and Robert J. Bell, both of McAlester, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Paul Gotcher, Co. Atty., of McAlester, for defendant in error.

JONES, J.   The defendant, Cleve Sweet, was charged by information in the district court of Pittsburg county, Okla., on November 27, 1934, with the crime of murder, was tried, convicted of manslaughter in the first degree, and sentenced to serve a term of four years' imprisonment in the State Penitentiary, and has appealed to this court.

This case has been called for trial three times.   The first trial, which was begun October 11, 1935, resulted in a hung jury.   The second time this case was called for trial, March 9, 1937, a mistrial was declared, and the jury discharged because one Gene Sweet, a brother of the defendant and a witness for the defendant, was charged with the murder of one Jim Davis, another witness for defendant, on the evening of October 11, 1935.   This case came on for trial the third time on February 13, 1939.

For a reversal of the judgment and sentence imposed on the defendant as a result of his conviction on this third trial, the defendant has made many assignments of error.

The defendant shot and killed one Bill Akins on November 2, 1934, and has interposed a plea of self-defense. No question as to the sufficiency of the evidence to support the conviction is raised, and it would only unnecessarily lengthen this opinion to detail the evidence.

The first assignment of error is the complaint of the defendant that the trial judge erred in overruling his application for a change of venue.

The defendant contended that he could not receive a fair and impartial trial in Pittsburg county, and that the residents of that county are prejudiced against him for the reason that "while this case was pending, and before it was finally disposed of, the defendant's brother was charged with the crime of murder, and was tried and convicted of manslaughter in the second degree. Also, a nephew by the name of Steve Alexander killed a man by the name of Estol Barnes, and was charged with the crime of murder, tried and convicted of manslaughter in the first degree, and sentenced to four years in the State Penitentiary. These incidents all occurred and the cases were all tried in Pittsburg county, Okla., between the date the defendant was charged with killing Bill Akins and the date of his trial." That newspapers in Pittsburg county published long articles relating to each of said cases; and that the said cases attracted unusual attention and notice, and had created a strong bias and prejudice against the defendant, to such an extent that it was impossible for him to have a fair and impartial trial in Pittsburg county.

In support of his application for change of venue, defendant filed 235 affidavits. The state filed some 100

counter-affidavits in answer to the defendant's showing, and, in addition, called and examined several of defendant's affiants.

The presumption of law is that a defendant can get a fair and impartial trial in the county in which the offense was committed; and if this is not true, the burden is upon the defendant who seeks a change of venue to establish his right thereto. Davis v. State, 53 Okla. Cr. 411, 12 P. 2d 555; Goss v. State, 24 Okla. Cr. 383, 218 P. 339; Maddox v. State, 12 Okla. Cr. 462, 158 P. 883.

On a motion for a change of venue, if upon the examination of the affidavits and counter-affidavits, and the examination of the witnesses in support of the application in open court, the court is convinced that a fair and impartial trial cannot be had in the county, then and under those conditions it is mandatory that he grant a change of venue, but not otherwise. He sits in judgment on that question just as any other question of fact that might be submitted to him, and unless it is clear that he has abused his discretion, or committed error in his judgment, his finding and judgment will not be disturbed by this court. Warren v. State, 24 Okla. Cr. 6, 215 P. 635; Wright v. State, 12 Okla. Cr. 443, 158 P. 290; Gentry v. State, 11 Okla. Cr. 355, 146 P. 719; Sayers v. State, 10 Okla. Cr. 233, 135 P. 1073; Edwards v. State, 9 Okla. Cr. 306, 131 P. 956, 44 L. R. A., N. S., 701; Watson v. State, 9 Okla. Cr. 1, 130 P. 816.

By an abuse of discretion is meant a clearly erroneous conclusion and judgment; one that is clearly against the logic and effect of the facts presented in support of and against the application. Johnson v. State, 1 Okla. Cr. 321, 97 P. 1059, 18 Ann. Cas. 300; Black v. State, 3 Okla. Cr. 547, 107 P. 524; Turner v. State, 4 Okla. Cr. 164, 111

P. 988; Starr v. State, 5 Okla. Cr. 440, 115 P. 356; Tegeler v. State, 9 Okla. Cr. 138, 130 P. 1164.

It is not an abuse of discretion to deny a change of venue where the subsequent proceedings show that there was no difficulty in securing a fair and impartial trial. Huffman v. State, 28 Okla. Cr. 296, 230 P. 272; Dodson v. State, 33 Okla. Cr. 85, 242 P. 578.

The mere fact that the inhabitants of a county have read and heard of the commission of a crime does not disqualify them. To warrant a change of venue, it must be made to appear they have a fixed opinion as to the guilt or innocence of an accused to the extent that an accused cannot have a fair trial by an impartial jury. Johnson v. State, 35 Okla. Cr. 212, 249 P. 971; Newton v. State, 56 Okla. Cr. 391, 40 P. 2d 688.

The court was very lenient with the attorneys for the defendant in the extent to which he allowed them to go into the juror's qualifications on their voir dire examination; and in this respect, we call attention to the fact that the defendant only used four of his peremptory challenges.

Under the showing made, and particularly in view of the facts as developed upon the trial and the verdict which was rendered, which will be hereinafter discussed, it does not appear to this court that the trial judge abused his discretion in denying the application for a change of venue.

The defendant alleges that error was committed by the court in stating at the beginning of the trial, "All witnesses in the case of the State of Oklahoma versus Gene Sweet will now be sworn"; error of the court in giving instruction 21, which, when read to the jury, stated that certain evidence had been given relative to the good reputation of the defendant, thereby putting defendant's repu-

tation at issue and calling the jury's attention to the fact that the defendant had failed to offer evidence of his good reputation; misconduct of counsel for prosecution in jumping to their feet during the reading of instruction 21 and stating the court was in error, that there was no evidence of the good reputation of the defendant.

The case-made does not show this. The only place these allegations appear are in the affidavit made by the defendant in support of his petition for a new trial and in the brief of defendant.

This court held in Saunders v. State, 4 Okla. Cr. 264, 111 P. 965, 966, Ann. Cas. 1912B, 766:

"A matter assigned as error in the motion for a new trial and in the petition in error, but not shown by the case-made to be true, cannot be considered in the appellate court. * * *

"The trial judge's certificate to the case-made attests the truthfulness and correctness of everything recited therein as having in fact taken place; but it does not attest the truthfulness of affidavits filed in support of or in opposition to matters alleged in the motion for a new trial."

Instruction No. 21 appears in the case-made, but there is nothing therein which in any way sustains the statement as contended for by the defendant.

The contention is made that counsel for the prosecution in their argument prejudiced the defendant by continually referring to him as Gene Sweet. This assignment, again, is not sustained by the record. The argument was not incorporated in the case-made. It is settled by numerous decisions of this court that improper argument must be objected to and a motion to strike from the consideration of the jury made. It is not sufficient to incorporate it in a motion for a new trial. Saunders v.

State, supra; Coulson v. State, 48 Okla. Cr. 206, 291 P. 152.

The defendant assigns as error an alleged prejudicial statement of the assistant county attorney made in his argument to the jury. The case-made contains the following excerpt:

"By Mr. Bell: Comes now the defendant and excepts to the remarks of the assistant county attorney that there was evidence in this case by the witness Dollins that Cleve Sweet had killed his hogs. We object to it on the grounds that there is no substantive proof of this and because of the fact that the testimony of Mr. Dollins, or either of them, was not to that effect; I have the questions I asked him here. By The Court: The court will instruct you that there is no evidence before you, no competent evidence before you as to who killed the hogs."

The defendant further assigns as error an alleged prejudicial statement made by the county attorney in his closing argument. The excerpt, as it appears in the case-made, is as follows:

"By Mr. Bell: At this time the defendant objects and excepts to the remarks of Mr. Paul Gotcher, county attorney, in the closing argument to the jury, wherein he has just stated that 'The eyes of the people of Pittsburg county are upon you today.' By The Court: Those statements are frequently made to the jury to awaken their responsibility both ways, as to the rights of the state and as to the rights of the defendant. Objection overruled. By Mr. Bell: We except."

Ordinarily, error cannot be predicated on mere unexplained excerpts from remarks of counsel to the jury, but enough must appear to advise the appellate court of what preceded alleged objectionable statements and their meaning to be deduced from the context, and whether they were invited or provoked by opposing counsel's remarks. Gorum v. State, 67 Okla. Cr. 75, 92 P. 2d 1086.

The court has repeatedly held that where the county attorney in his argument to the jury makes remarks not warranted by the testimony and upon objection withdraws them or upon objection sustained by the court and the jury admonished not to consider them, the objectionable remarks do not constitute reversible error, if under the circumstances the defendant is not injured. Dixon v. State, 56 Okla. Cr. 454, 42 P. 2d 286; Gunnells v. State, 7 Okla. Cr. 98, 122 P. 264; Smith v. State, 6 Okla. Cr. 380, 118 P. 1003; Gardner v. State, 5 Okla. Cr. 531, 115 P. 607.

This court stated in Mulkey v. State, 5 Okla. Cr. 75, 113 P. 532, 533:

"A prosecuting attorney must confine his argument to a fair discussion of the issues in the case and the legitimate argument on the part of the defendant, and, where a prosecuting attorney in his closing argument to the jury went outside of the record and appealed to the passions and prejudices of the jury, the strength of the testimony against the defendant will be considered, and, if the improper argument may have determined the verdict, a new trial will be granted."

The right to argument contemplates a liberal freedom of speech and a wide range of discussion and illustration. Counsel have the right to fully discuss the evidence from their standpoint. It is only when argument is grossly improper and unwarranted upon a point which may have affected the defendant's rights that a reversal can be based on improper argument. Murray v. State, 24 Okla. Cr. 113, 217 P. 891; Carmichael v. State, 44 Okla. Cr. 160, 279 P. 515; Wisdom v. State, 56 Okla. Cr. 140, 36 P. 2d 514; Wallace v. State, 57 Okla. Cr. 50, 45 P. 2d 164.

From the excerpts before us, and in view of the cases cited hereinabove and a consideration of the verdict rendered, we are of the opinion that the rights of the defendant

were not prejudiced by the alleged improper remarks of counsel for the prosecution.

The defendant contends that the county attorney throughout the trial persistently asked witnesses concerning and inferred that the defendant was guilty of the shooting of certain hogs, over the repeated ruling of the court that said questions were objectionable.

A cause will be reversed, where the prosecuting attorney repeatedly, over objections, asks prejudicial questions, and succeeds in getting such testimony before the jury. Bingham v. State, 44 Okla. Cr. 258, 280 P. 636. We have carefully read this record and do not think the county attorney in the examination of any of the witnesses was guilty of any misconduct prejudicial to the defendant.

The defendant contends that the court erred in excluding the testimony of the defendant's witnesses Ed Ratliff, Pres Newman, and Jack Lance. These three witnesses were introduced along with a number of other witnesses who testified to the general reputation of the deceased. They were of the opinion that the deceased was an overbearing man, but did not know or were unwilling to state what his general reputation was in the neighborhood as to being a violent, quarrelsome, and dangerous man. In a case of this kind, general reputation of the deceased is admissible; and the court did admit evidence of the deceased's general reputation; but where the witnesses were unable to state his general reputation, their testimony should not be admitted.

The defendant contends further that the court erred in excluding the testimony of the defendant's witnesses Clyde Watts, Claude Dennis, and Bill Alexander. The testimony of these witnesses tended to show that the deceased was of a disagreeable temperament, but showed no

specific instances of threats to the defendant or a third person or any unprovoked violence.

Where in a homicide case self-defense is pleaded, specific acts of violence on the part of the deceased towards others than the defendant may, if known to the defendant prior to the homicide, be shown in evidence. Mathews v. State, 16 Okla. Cr. 466, 184 P. 468; Elliott v. State, 18 Okla. Cr. 230, 194 P. 267.

The knowledge of the defendant, derived from such personal observation, as well as otherwise, of the violent temper of the deceased and his liability to attack persons without cause, is a most important circumstance in determining from the standpoint of the accused the reasonableness of the danger apprehended by him, and from which the defendant might estimate the conduct of the deceased, the character of the attack made upon him, and what he might expect from his assailant as well as that which he might at the moment deem necessary to guard himself against. Sneed v. Territory of Oklahoma, 16 Okla. Cr. 641, 86 P. 70, 8 Ann. Cas. 354.

This court stated in Mulkey v. State, supra:

"As a general rule, the evidence of the character of the deceased must be confined to his general reputation, and evidence of particular acts of violence is inadmissible unless they were directly connected with that involved in the homicide. * * * But, under the facts which the evidence here tends to prove, these prior assaults and acts of violence, being known to the defendant, were important circumstances in determining from the standpoint of the defendant the reasonableness of the danger apprehended by him * * *."

Since the testimony offered by these witnesses tended to prove neither threats to the defendant nor acts of unprovoked violence toward the defendant or others, it was

clearly inadmissible. The court did admit considerable testimony along this line, which did include all of the acts of unprovoked violence committed by the deceased which were shown to have been within the personal knowledge of the defendant.

Defendant assigns as error of the court the permitting of witnesses Gus Mitchell and W. S. Sweeden to testify over the objection of defendant, because their postoffice addresses were improperly stated upon the notice of witnesses served upon the defendant.

Gus Mitchell's address was given as Hartshorne, when in fact he lived at Higgins, eight miles from Hartshorne. W. S. Sweeden's address was given as Holdenville, when his correct address was Holdenville, Route 3. The defendant first objected to the inaccuracy of the addresses when the witnesses were called by the state to testify.

The purpose in furnishing the defendant with the names and addresses of the witnesses to be used by the state is to apprise him whom the witnesses are and where they may be found. If the defendant had not been able to locate the witnesses because of the incorrect addresses, he should have made his troubles known to the court before announcing ready for trial. But he did not do this. He waived any right he might have had to require the state to furnish more definite information as to the post-office addresses of these witnesses; and the court properly overruled his objection. Galbert v. State, 12 Okla. Cr. 571, 160 P. 332. See, also, State v. Frisbee, 6 Okla. Cr. 406, 127 P. 1091.

No error could be predicated upon the testimony of these two witnesses for the further reason that the witnesses had testified in the former trial, and the defendant was acquainted with their testimony and knew from the

evidence taken before in the former trial the residences of these witnesses.

It is alleged the court committed error in permitting the witness Gordy Orr to testify in chief for the state, when said witness' name and address was not served upon the defendant or his counsel.

The witness Gordy Orr was properly a rebuttal witness. The attorneys for the defendant did not reserve their opening statement to the jury, but made the same immediately after the opening statement of the county attorney. In that statement they outlined the facts to be shown by the defendant. The witness Orr was sick; and his condition was such that the court, after a hearing, determined that his testimony should be taken rather than risk the health of the witness by forcing him to wait until the defendant had introduced his evidence. In view of the testimony of this witness and the record as later developed, there was nothing prejudicial by reason of this action of the court. Orr's testimony concerned an immaterial matter, and probably had no effect at all upon the verdict.

In Bigfeather v. State, 7 Okla. Cr. 364, 123 P. 1026, this court held:

"The law does not require that the names of witnesses used in rebuttal shall be indorsed on an indictment or information."

In Tobin v. State, 49 Okla. Cr. 265, 293 P. 575, 579, it is stated:

"* * * The question of admitting testimony that would be proper in chief to be used in rebuttal is within the sound discretion of the trial judge, and, unless there has been an abuse of that discretion, the admission of the testimony will not be sufficient to warrant a reversal of the case."

This court said in Smith v. State, 36 Okla. Cr. 9, 251 P. 507:

"Evidence out of order will not work a reversal, where, if introduced in order, the result would probably have been the same."

In Tingley v. State, 16 Okla. Cr. 639, 184 P. 599, it was held:

"It is discretionary with the trial court, in furtherance of justice, to permit evidence in rebuttal which would have been competent evidence in chief. * * *

"This court will not reverse a judgment of conviction on the ground of the improper admission of evidence unless it appears, after an examination of the entire record, that in the opinion of the court the error complained of has resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

The defendant contended there was error of the court in admitting the reading of the transcript of the testimony of Clifford Sweet over the objections of the defendant.

A subpoena was served on Clifford Sweet. He answered and was in the county, but not present in court. The chief of police testified that he went to the home of Clifford Sweet and that in his opinion he was sick. The state was allowed to read a transcript of testimony given by the witness at a previous trial of this case. The defendant objected on the ground of an invasion of constitutional rights, the transcript not having been filed for 24 hours as a deposition, and improper showing that witness was unable to attend court.

In Davis v. State, 20 Okla. Cr. 203, 201 P. 1001, this court held:

"Where the accused at a former trial or at a preliminary hearing once enjoyed his right to be confronted by a

witness against him and had the privilege of cross-examining the witness, if at a subsequent trial, involving the same issues, it satisfactorily appears that the witness has died, become insane, or has permanently left the state without collusion or procurement of either party and that his presence with due diligence cannot be had, or where the witness is sick and unable to testify, or his whereabouts cannot with due diligence be ascertained, a transcript of the testimony of such witness may be introduced as the evidence of such absent witness."

See, also, Alexander v. State, 51 Okla. Cr. 1, 299 P. 237; Warren v. State, 6 Okla. Cr. 1, 115 P. 812, 34 L. R. A., N. S., 1121.

Diligent effort made in good faith to produce the witness at the trial should be shown. Golden v. State, 23 Okla. Cr. 243, 214 P. 946; Scott v. State, 43 Okla. Cr. 232, 278 P. 393.

It is not necessary that the transcript should be filed in the trial court. Baldock v. State, 16 Okla. Cr. 203, 182 P. 265.

The testimony of the chief of police, which is undisputed, was a sufficient showing that the witness Clifford Sweet was unable to attend court. The transcript, which was introduced, was of the evidence of the witness taken at the former trial, at which time the attorneys for the defendant fully cross-examined him.

The defendant contends the court erred in sustaining an objection to a question asked the witness J. W. Green as to whether he had personal knowledge of the fact that the deceased was in the habit of carrying a pistol. The court later, however, in the examination of the defendant, allowed him to testify at length concerning this matter. This matter, then, was properly before the jury; and no prejudice could have resulted by the exclusion of this evidence of J. W. Green.

458

In this case we have given careful attention to all of the assignments of error. The deceased was killed by the defendant at a time when he was several feet from the defendant and unarmed. The defendant admitted he could see both of the hands of the deceased and that he had nothing in them. Under the testimony of the defendant, himself, no reasonable jury could have done otherwise than convict the defendant of manslaughter in the first degree. Many threats were shown to have been made by the deceased towards the defendant; and evidence was introduced both pro and con on the question of the bad reputation of the deceased for being of a quarrelsome and violent disposition. Undoubtedly, these factors did and should have influenced the jury in their verdict.

If the verdict had been for murder or an excessive number of years had been assessed for manslaughter in the first degree, this court would have, under the record, modified the judgment; but human life is too precious for a defendant to go unscathed where the proof was that the deceased met his death under the facts as admitted by the defendant.

The case was hard fought. Some few minor errors have crept into the record concerning the admission or rejection of evidence, but as a whole the trial judge succeeded in confining both the county attorney and the attorneys for the defendant to the issues upon trial.

From an examination of the whole record, we are of the opinion that there are no errors of sufficient importance to require a reversal of this case.

The judgment of the district court of Pittsburg county is accordingly affirmed.

DOYLE, P. J., and BAREFOOT, J., concur.