Hurbie Franklin FAIRRIS, Plaintiff
in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A–12185.

Criminal Court of Appeals of Oklahoma.

Sept. 7, 1955.

a robbery being committed in the Jones Boys Grocery Store at 44th and Shields streets in Oklahoma City. Thereafter an information was filed in the District Court of Oklahoma County charging the defendant, Hurbie Franklin Fairris, James Edward Skinner, Raymond Carroll Price and Peggy Fry with the murder of Cravatt; a severance was granted, the defendant Fairris was tried, convicted and pursuant to the verdict of the jury was sentenced to death in the electric chair and has appealed.

Two propositions are presented by the appeal. First, the defendant was not furnished with the correct names and addresses of witnesses two days before the case was tried. Second, the court erred in admitting the testimony of Bert Atkins concerning irrelevant matters which were prejudicial to the accused.

The evidence of the State briefly stated was as follows:

The Jones Boys Grocery Store Number 6 was located at 44th and South Shields in Oklahoma City. A. W. Truman was the assistant manager of the store and Mrs. Fannie Ransom was the bookkeeper. For about two weeks prior to July 16, 1954, Jimmie Hodges had been employed at the store as an errand boy. Hodges did not work at the store on the afternoon of July 16; instead he met the four parties accused of the murder at a drug store on North Walnut Street. Some three or four hours after this meeting, the attempted robbery of the grocery store occurred. The proof showed that Fairris, Skinner and Price had driven from Dallas, Texas, to Oklahoma City in a green-colored Pontiac automobile with the girl who was known to them as Fairris' sweetheart and allegedly being Peggy Fry. The girl was left at a drug store in the vicinity of the grocery store which was to be robbed while the boys proceeded with their plan to effect the robbery. Fairris and Price waited in the shadows of the store about 8:30 p. m. until Mr. Truman locked the door and started leaving the store. They then approached Truman, punched him in the ribs with their pistols and advised him that they wanted

David Tant, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, Presiding Judge.

On July 16, 1954, city detective Bennie Cravatt was killed while attempting to stop

the safes opened so that they could take the money which was in the two safes located in the store building. Truman told them that he did not know the combinations but that Mrs. Ransom, the bookkeeper, was the person who could open the safes. Mrs. Ransom lived about two blocks from the store. Fairris and Price then started with Truman in Truman's pickup to the Ransom house. Along the way they picked up Skinner. Mr. and Mrs. Nance from Ardmore were visiting at the Ransom home. The defendant and his accomplices entered the Ransom home, tied the hands of Mr. Ransom and Mr. Nance and left Skinner to guard those left at the Ransom house while Fairris and Price took Mrs. Ransom back to the store to open the safes.

In the meantime a patron of the store had seen the first altercation between Truman and Fairris and Price. He had gone to a telephone and had called the police who in turn had notified Keith Jones, manager of the store. Before the return of Fairris and Price with Mrs. Ransom to the store, Mr. and Mrs. Keith Jones had gone into the store building. While they were there Officers Cravatt and Rackly arrived and entered the store building. Jones and his wife left to park their automobile across the street in a darkened alley and Officer Rackly left the store at the same time to remove the police car from in front of the store building. Immediately after Jones and his wife and Rackly got in their cars to move them, Fairris and Price arrived at the store with Mrs. Ransom and entered it.

Mrs. Ransom testified that when they entered the store she turned toward the east to a large safe with Price and Fairris immediately behind her; that they had only taken a few steps when she heard a voice behind her state, "Boys, police officers, hands up;" that immediately shooting commenced and she jumped into a milk box and hid until the shooting had ended. Cravatt was killed instantly by a bullet which penetrated his heart. He fell near a meat counter in the store. Officer Rackly was returning to the store when defendant entered. The store was lighted. He saw Cravatt rise and speak to the parties and then Fairris lunged toward Cravatt and the shooting commenced. Rackly saw Price with a gun in his hand so Rackly shot Price in the leg. Price fell inside the store building with his gun in his hand, but his gun was never discharged. Fairris fired some shots on the inside of the store and as he emerged from the store he was shot in the stomach by Officer Rackly. Fairris shot twice at Rackly before Fairris escaped down the alley. A little over an hour later the defendant Fairris was let out of a car near a barbecue stand on the outskirts of Shawnee. He commenced yelling for help which attracted the attention of some bystanders who went to him and then called an ambulance and the chief of police. Fairris was taken to the municipal hospital in Shawnee suffering from his gunshot wound in the stomach. Later that night he admitted that he had been one of the participants in the attempted robbery of the Jones Boys Store and that he had been shot during the affray.

The only evidence offered on behalf of the defendant was the testimony of his accomplice, Price. Price told how he and his accomplices had left Dallas, Texas, with Fairris' sweetheart. He admitted the planned robbery but testified that Officer Cravatt was shot by a mysterious third officer who was concealed in the back of the store. All of the evidence except that of Price showed that Cravatt was the only party in the store except Fairris, Price and Mrs. Ransom.

A ballistics expert testified that he made tests of bullets fired from the various guns used by the officers and Price and compared them with the bullet that had been removed from the body of Cravatt and that none of the guns used by the officers and Price fired the bullet which took the life of Cravatt. The pistol used by Fairris was never recovered but a bullet fired from the gun which the testimony showed Fairris was using was removed from the place where it had lodged in the building and the ballistics expert testified that the bullet which took the life of Officer Cravatt and this recovered bullet were fired from the same gun. With the exception of the tes-

timony of the codefendant Price, the proof was overwhelming and convincing that Fairris fired the shot which killed Officer Cravatt.

■ As to the first proposition, the record shows that during the trial of the case one Bobbie Curtright was called as a witness. At the time he was called to testify, the county attorney stated:

"* * * we discovered this morning that this witness's last name is Curtright, and that he was endorsed as Jimmie, but his correct name is Bobbie. We would like to have leave at this time to correct the name from Jimmie to Bobbie.

"Mr. Tant: To which we object as incompetent, irrelevant and immaterial.

"The Court: Objection overruled.

"Mr. Tant: Exception.

"The Court: Let the record show that the State is granted leave to endorse the name of Bobbie Curtright on the information in place of Jimmie Curtright, Jimmie Curtright and Bobbie Curtright being one and the same person and the name Jimmie being endorsed on the information in this case through error."

This witness was one among others who testified he saw Fairris lying by the side of the road near the outskirts of Shawnee suffering from a gunshot wound. After he had completed his testimony and was preparing to leave the witness stand, the trial court asked him his address and he stated, "641 North Broadway." In the list of witnesses served on the defendant and his counsel more than two days prior to the trial, the particular witness was listed as Jimmie Curtright and his address given as 741 North Broadway in Shawnee.

■■ In the case of Sweet v. State, 70 Okl.Cr. 443, 107 P.2d 817, 823, which was a murder case, this court stated in the opinion:

"Defendant assigns as error of the court the permitting of witnesses Gus Mitchell and W. S. Sweeden to testify over the objection of defendant, because their post office addresses were improperly stated upon the notice of witnesses served upon the defendant.

"Gus Mitchell's address was given as Hartshorne, when in fact he lived at Higgins, eight miles from Hartshorne. W. S. Sweeden's address was given as Holdenville, when his correct address was Holdenville, Route 3. The defendant first objected to the inaccuracy of the addresses when the witnesses were called by the State to testify.

"The purpose in furnishing the defendant with the names and addresses of the witnesses to be used by the State is to apprise him whom the witnesses are and where they may be found. If the defendant had not been able to locate the witnesses because of the incorrect addresses, he should have made his troubles known to the court before announcing ready for trial. But he did not do this. He waived any right he might have had to require the State to furnish more definite information as to the postoffice addresses of these witnesses; and the court properly overruled his objection. Galbert v. State, 12 Okl.Cr. 571, 160 P. 332. See, also, State v. Frisbee, 8 Okl.Cr. 406, 127 P. 1091."

In Denton v. State, 58 Okl.Cr. 275, 53 P.2d 1136, it was held that permitting a witness to testify in a murder case whose address was incorrectly given was not reversible error where the testimony of the witness was cumulative and not prejudicial. To the same effect is Havill v. United States, 5 Okl.Cr. 334, 115 P. 119; and McKee v. State, 38 Okl.Cr. 132, 259 P. 607.

■ When the prosecuting attorney asked permission to change the name "Jimmie" to "Bobbie" on the list of witnesses endorsed on the information, counsel for the accused merely made the objection that it was "incompetent, irrelevant and immaterial." At no time did he express surprise and indicate that the accused was prejudiced by the action of the court and the record affirmatively disclosed that there was no prejudice resulting to the accused

712

by reason of the action of the court in permitting a change to be made in the given name of witness. Chief of Police Holt of Shawnee testified to the same thing related by the witness Curtright. In addition, counsel for the defendant admitted the truthfulness of Curtright's testimony when in his summation of facts he stated, "The defendant was wounded but escaped from the grocery store but was later picked up by the side of the highway in Shawnee, Oklahoma, suffering from gunshot wounds and in a rather critical condition." In the absence of any claim of prejudice or that the accused through his counsel had been unable to locate and contact the witnesses before the trial, and further, in view of the fact that counsel for the accused admits the truthfulness of the testimony of this witness, we cannot conclude that the admission of his evidence constituted reversible error.

The second proposition is directed at the admission in evidence of the testimony of one Bert Atkins. Atkins testified that his home was located in the same block as the Ransom home but faced 42nd Street while the Ransom home faced 43rd Street. His house was about four houses east of the Ransom home. He was attempting to sleep in his yard when he heard the shooting at the store. Shortly thereafter a man appeared in Atkins' yard coming from the direction of the Ransom house. This man was armed. As he crossed the Atkins yard, Atkins started to follow him but the individual fired two shots at Atkins and Atkins stopped.

Counsel for the accused contends the admission of this evidence was prejudicial because the jury might have concluded that it was the defendant Fairris who was running across the Atkins yard and that Fairris in complete disregard of human life attempted to shoot Atkins and that the jury "could have concluded further that the defendant was not content at having engaged in a shooting with a police officer and was then willing to shoot anyone who crossed his path."

The evidence of the State showed that Skinner was left at the Ransom house to guard the people who remained behind when Mrs. Ransom was taken to the store by the robbers. These parties who remained at the house testified that when the shooting occurred at the store Skinner said he heard shots and that he began to get nervous. He attempted to get the key to the Nance car so that he could escape, but failing to secure the key, he ran out the back door of the Ransom house, jumped off the porch and ran towards the rear which was in the direction of the Atkins home. There was no confusion in the evidence about who took the shots at Atkins. It was Skinner. Fairris was seriously wounded and was picked up by his sweetheart who was parked nearby in a Pontiac automobile.

The parties involved had entered into a conspiracy to rob the grocery store. As a part of the conspiracy Skinner remained as a guard of certain hostages while Fairris and Price proceeded with the actual robbery. Everything done by Skinner, Price or Fairris in the consummation of their conspiracy was proper to be shown. If it should be argued that the conspiracy to rob the store had been fully consummated and that thereafter any acts of a co-conspirator committed outside of the presence of the accused were inadmissible, it is well to point out that the conspiracy to rob was still in progress and furthermore this court has held that evidence of flight immediately after the commission of a crime is admissible as a part of the res gestae. Clark v. State, 63 Okl.Cr. 138, 73 P.2d 481.

After the conspiracy had been fully consummated testimony concerning the independent flight of a co-conspirator would be inadmissible. Wharton's Criminal Evidence, Vol. 2, § 721; Hollingshead v. State, 21 Okl.Cr. 306, 207 P. 104. Here the record shows the shots were being fired and the conspirator guarding the hostages fled. The circumstances of his flight as shown by the testimony of Atkins was a part of the res gestae and so close in point of time to the attempted commission of the robbery as to be admissible. State v. Yee Guck, 99 Or. 231, 195 P. 363. As Wharton

states it, "This evidence is admissible because it is deemed to be part of the transaction immediately surrounding the crime, and upon the theory that the event is speaking through the instinctive words or acts of the participant." Wharton's Criminal Evidence, Vol. 2, § 720.

We have not only considered the two assignments of error presented in defendant's brief, but have carefully read the record to determine whether there was any error of a substantial nature which would require a reversal or modification of the sentence even though such question was not raised. We have found none. On the other hand the record shows the trial court in the giving of instructions went much further than the law requires on behalf of the accused. When he gave the requested instructions of the defendant, he placed an undue burden on the State as the instructions were much more favorable to the accused than he was entitled to under the law.

The record shows accused was a hardened criminal with a complete disregard for human life or the property of others. He and his pals had armed themselves with loaded pistols and left Dallas on the prowl seeking prey. It was a great tragedy that a fine officer lost his life at defendant's hands, but it was fortunate that others were not killed by him or one of his partners in crime. Justice requires the infliction of the death penalty as punishment for murder committed under such facts as those shown by the record before us.

It is therefore ordered that the judgment and sentence of the District Court of Oklahoma County be and the same is hereby affirmed.

The time originally set for the execution of the defendant, Hurbie Franklin Fairris, having passed pending this appeal, it is further ordered that the judgment and sentence of the District Court of Oklahoma County be carried out by the electrocution of Hurbie Franklin Fairris by the Warden of the State Penitentiary at McAlester, Oklahoma, on Tuesday, October 18, 1955.

BRETT and POWELL, JJ., concur.