Kenneth **BLACKWOOD**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–74–157.

Court of Criminal Appeals of Oklahoma.

Aug. 14, 1974.

Henry, West & Sill, Shawnee, James D. Sill and Mike Adcock, Legal Interns, for appellant.

Larry Derryberry, Atty. Gen., Bill James, Asst. Atty. Gen., for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Kenneth Blackwood, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Pottawatomie County, Case No. CRF–73–25, for the offense of Robbery with Firearms After Prior Conviction of a Felony. His punishment was set at twenty (20) years' imprisonment, and from said

judgment and sentence a timely appeal has been perfected to this Court.

At the trial Brenda Neal testified that she was working at the Time Store, a convenience grocery in Shawnee, when it was robbed at 3:00 a.m., January 1, 1973. Recounting the incident, Ms. Neal said a young man walked into the store, looked around and left, and returned in a few minutes with a man whom she identified as the defendant and a third man. She said the defendant and the third man walked to the beer cooler, got three six-packs and brought them to the cash register. She testified that when she asked them if that was all they wanted, the defendant, holding a gun on the counter, said, "No, we want all your money, too." Ms. Neal said she gave him the money and that while the defendant led her to the rear of the store admonishing her not to seek help immediately, one of the other men ripped the phone from the wall. The cashier identified a gun tagged as State's Exhibit No. 2 as resembling the gun the defendant had used in the robbery and testified that following the hold-up her records showed that Two Hundred and Seventy Nine ($279.00) dollars was missing.

Lloyd Gribble, a detective with the Shawnee Police Department, identified State's Exhibit No. 2 as the gun he recovered in a warranted search of co-defendant Steve Gibson's grandmother's residence at 222 South Eden in Shawnee, January 18, 1973. Officer Gribble further testified that while in custody on January 17, after being given his Miranda rights, the defendant gave a tape-recorded statement setting forth his participation in, and knowledge of, the robbery. Officer Gribble stated that the defendant offered to make a statement if the District Attorney would agree on a five year sentence. He further stated that he called the District Attorney, in the presence of the defendant and his wife, and that the District Attorney said the agreement could not be made. He said that he told the defendant a five year sentence was not possible and the defendant said he would still make a statement.

In the taped confession introduced as State's Exhibit No. 1, the defendant told of a New Year's party he and the co-defendant had attended at the Holiday Inn in Shawnee. He said that some time after midnight when the group ran out of money and beer and their credit had been cut off at the motel club, he and two other men got a gun belonging to Steve Gibson's mother, which the defendant had hidden earlier in the evening in the motel bathroom, and they all left to go get some money. In the taped statement the defendant explained that although the gun was unloaded, he used it when they robbed the Time Store. After the robbery the defendant explained that they split the money, bought more beer and returned to the motel room where they had left a blonde woman named Betty. The defendant said that the day after the incident Steve Gibson was going to return the gun to his mother's house from which he had taken it without her knowledge.

Betty Wintz Taylor testified that she was at the party at the Holiday Inn on January 1, 1973, drinking with the defendant and some other men for several hours. She testified that at approximately 12:30 a.m., she saw the defendant and two other men doing something with the vent in the bathroom of the motel room but they shut the door and she could not see exactly what they were doing. Some moments later the three men left the motel saying, "We need some money." Betty Taylor said that to her knowledge no one at the party had any money at 12:30 a.m. because they had wanted to buy some beer and could not. They returned at approximately 4:00 a.m. with beer and money.

The defendant did not take the stand but testifying in his behalf was his ex-wife, Karen Fuller. Ms. Fuller said that she met the defendant in December, 1972, and they had discussed marrying. She went to the New Year's Eve party at the Holiday Inn and upon seeing Ms. Taylor there she

became angry. She said she left the party at approximately 12:30 a.m. after an argument with the defendant. Ms. Fuller said she did not see the defendant again until January 3 and that on that date they went to Tulsa where they were married the following day, January 4. She explained that they were living in Tulsa when her husband was arrested on January 15, in connection with the robbery. On January 17 she had gone to see her husband who was in custody in Shawnee and was with him when, according to her testimony, Officer Gribble told her husband that if he would tell the authorities what happened they would try to get him a light sentence. She further testified that she did not hear Officer Gribble give the defendant any rights in the fifteen to twenty minutes she was with him immediately preceding his tape-recorded statement.

In the first proposition of error, the defendant contends that reversible error was committed by the trial court in refusing to grant a 48 hour continuance for the purpose of allowing the defendant to obtain a list of witnesses as provided by Article II, § 20 of the Oklahoma Constitution.

■ We agree with the defendant's contention that he is entitled to a list of witnesses to be called by the State but, although the State admitted before trial that a new list of witnesses was not provided the defendant prior to trial, it was also pointed out that all the witnesses to be called were endorsed on the original Information previously furnished the defendant. This Court has repeatedly held that service of a separate list of witnesses is not required if it can be shown that the names of the State's witnesses were furnished. Dealing with this same issue, this Court held in Born v. State, Okl.Cr., 397 P.2d 924 (1964), quoting from Manning v. State, 7 Okl.Cr. 367, 368, 123 P. 1029:

" 'The law does not prescribe the manner in which the names of witnesses in a capital case shall be furnished the defendant. If it be made to appear to the satisfaction of the trial court that such

names were furnished the appellant at least two days before the case was called for trial, the manner in which the names were so furnished becomes immaterial.' " 397 P.2d at page 928.

Also, in his first proposition, the defendant contends that because the last name and address of one of the witnesses who testified had changed since the endorsement of the Information, the Information was insufficient to serve as a list of witnesses. The witness, Betty Taylor, was endorsed as Betty Wentz, 508 North Broadway, Shawnee, her last name being misspelled with her correct address on January 1, 1973. After April 3, 1973, the witness remarried, her name being Betty Wintz Taylor and she moved to 311½ South Aydelotte, Shawnee.

■ Although this Court has not found a situation completely analogous to this, there is ample authority to indicate that the defendant was not prejudiced by the name and address change. Brock v. State, Okl.Cr., 349 P.2d 20 (1960) was based on a similar contention that the defendant claimed he was required to go to trial without a sufficient list of witnesses and addresses because only the town where the witnesses lived was listed on the Information. In regard to this allegation this Court held:

"No showing was made that the addresses given were incorrect or that during the three months prior to trial defense counsel had been unable on account of the addresses given, to contact the proposed witnesses. We are convinced that Henryetta is not of sufficient population but what slight inquiry would have enabled anyone desiring to contact the listed State's witnesses, to have done so, with the aid of the addresses given." at page 25.

Certainly it can be assumed that the same reasoning would also apply in the instant case.

In Fairris v. State, Okl.Cr., 287 P.2d 708 (1955), one Bobbie Curtright was called as a witness at trial. The County Attorney

stated that on the morning of trial he had discovered the witness' name was "Bobbie" Curtright, although it had been endorsed on the Information as "Jimmie" Curtright and leave was granted to amend the Information. After giving his testimony the witness also disclosed that although his address had been listed on the Information as 741 North Broadway in Shawnee, it was actually 641 North Broadway. In response to defendant's proposition that admission of this testimony was accordingly error, it was held:

"The purpose in furnishing the defendant with the names and addresses of the witnesses to be used by the State is to apprise him whom the witnesses are and where they may be found. If the defendant had not been able to locate the witnesses because of the incorrect addresses, he should have made his troubles known to the court before announcing ready for trial." at page 711.

In the instant case, although defendant's counsel announced ready for trial, "subject to some motions," he did not indicate to the trial court that he had been unable to locate the witness because of the incorrect name and address, but merely that he sought a continuance because a list had not been furnished and because, "I don't know if the address has changed." (Tr 9)

Even if the endorsement on the Information of the witness under the name of Betty Wentz was incorrect, the defendant waived his objection to her testimony under authority set forth in Plumlee v. State, Okl.Cr., 361 P.2d 223 (1961) and quoting from Britt v. State, Okl.Cr., 285 P.2d 441, which held:

" 'The trial court in the exercise of judicial discretion may permit the name of a witness to be endorsed upon the information even after the trial has commenced. If defendant's counsel is surprised at such action and such endorsement of an additional witness requires a production of further testimony by defendant, he should withdraw his announcement of ready for trial and should file a motion

for a postponement or a continuance in which he should set out the facts constituting such surprise, and the other evidence, if any, he could produce to rebut the testimony of such additional witness if the trial of the case was continued. Where he fails to do this the error, if any, is waived.' " at page 226

In the instant case, in the absence of any claim that the accused, through his counsel, had been unable to locate or contact the witness Betty Wentz, before trial, in counsel's failure to show surprise over the introduction of the witness, and in view of the cumulative nature of her testimony, we cannot conclude that it was error to refuse to grant a continuance.

■ In his second proposition, the defendant contends it was error to deny a continuance because a preliminary hearing transcript was furnished defendant's counsel only three judicial days before trial. In Bryant v. State, Okl.Cr., 471 P.2d 948 (1970), the preliminary hearing was held on January 24th and the trial was set for February 15th and 16th. Counsel in that case, not yet having received a copy of the transcript, filed for a continuance on February 12th, which was denied. On appeal he contended that denial of the continuance constituted prejudicial error and this Court said:

"We observe from the record in the instant case that the prosecution attorney furnished the defendant with a copy of a tape recording of the testimony of the preliminary hearing thirty-six (36) hours before trial. This appears to have been adequate time for the defense to have made a copy of the testimony he desired so he may have used it for impeaching the State's witnesses."

In view of this authority, and given the facts in the instant case that a copy of the 77 page transcript was furnished defendant's counsel five days before trial, three of which were work days, we find the defendant had ample time to review the transcript and was not prejudiced by the failure of the trial court to grant the continu-

ance. Also see Borelli v. State, Okl.Cr., 453 P.2d 312 (1969).

■ The defendant next contends that error was committed in admitting, over objection, his taped confession because the statement was not voluntarily made and was in violation of his constitutional rights. Defendant bases this contention on the fact that the tape-recorded statement did not include a recording of the recita-' tion of the Miranda rights, and because there was a conflict in testimony concerning those rights having been given to the defendant.

In an in camera hearing on defendant's Motion to Suppress the confession, the defendant testified that no rights were explained to him, and his ex-wife testified that during the 15 to 20 minutes she was with the defendant prior to his confession, no rights were given to him. The record reveals that Officer Gribble's testimony in regard to the issue, in pertinent part, was:

"Q. Prior to having this conversation, did you advise Mr. Blackwood of his rights?

"A. Yes, I did.

"Q. Would you tell the Court what rights you advised Mr. Blackwood of?

"A. I advised Mr. Blackwood that he had a right to remian silent, that anything that he said could and would be used against him in the court of law, that he had a right to have an attorney and have him present while he was being questioned, that if he could not afford an attorney one would be appointed for him by the Court." (Tr. 15)

A review of the record also discloses that the taped confession began with the following statement:

"This is Detective Lloyd Gribble. This tape is being made January 17, 1973, at 4:02 PM in the presence of Karen Blackwood. This is concerning an armed robbery at the TIME STORE that happened January 1, 1973, involving Kenneth Blackwood, Raymond Yandell and Steve Gibson.

Kenneth Blackwood has already been advised of his rights and will now make a statement concerning this armed robbery." (Tr. 29)

The trial court properly considered the issue of the warning given to the defendant and determined that the confession was admissible. Dealing with an analogous situation in Bryant v. State, Okl.Cr., 478 P.2d 907 (1971), this Court said, in paragraph 3 of the Syllabus:

"When evidence is taken outside the hearing of the jury on a Motion to Suppress incriminatory statements made by an accused while in custody and there is sufficient evidence to support the ruling of the trial court that the defendant had been thoroughly advised of his constitutional rights and understood the same prior to making the incriminatory statements, the court's ruling will not be disturbed on appeal."

Accordingly, we find there was no error in overruling the defendant's Motion to Suppress.

■ In his final proposition, the defendant alleges that error resulted when State's Exhibit #2 was not entered into evidence, contending that the gun was improper evidence and was used to prejudice the jury.

We fail to agree with this contention, however, because the gun was the fruit of a warranted search based on information given by the defendant in his confession. In the taped confession, the following statements were made:

"GRIBBLE: Where did the gun go?

"KENNETH: When Steve, Steve left with the gun, he said he was going to try to put it back where it belonged. There at his momma's. That he was going to try to put the gun back and hope she didn't miss it. Hope she hadn't missed it up till then. Steve had the gun when I let him out there at the laundromat on East Main. He had the gun with him. I could find the gun if I was out where I could find it. I could probably get my hands on it. But to say

right now where it's at . . . I don't truthfully know. That's all I know. He had the gun when he left." (Tr. 38)

At trial, Officer Gribble testified that based on this information, he conducted a search of the house of co-defendant Steve Gibson's grandmother, and found the gun, which was tagged and initialed at that time. Furthermore, at the trial, the complaining witness, Brenda Neal, identified the Exhibit saying, "That looks like the gun." (Tr. 63) We find that the weapon could have been properly admitted into evidence and that apparently the failure to do so was an oversight. For this reason, the display of the gun by the prosecution did not constitute error. We further observe that the defendant failed to show how he was prejudiced by the display of the gun in view of the other evidence presented at trial.

For all of the reasons above set forth, the judgment and sentence appealed from is accordingly, affirmed.

BLISS, P. J., concurs.

BRETT, J., concurs in results.